INTERNATIONAL INSURANCE
COMPANY, Plaintiff,

v.

GUARANTY NATIONAL INSURANCE
COMPANY, Defendant.

GUARANTY NATIONAL INSURANCE
COMPANY, a Colorado corporation,
and City of Birmingham, a municipal
corporation, Plaintiffs,

v.

INTERNATIONAL INSURANCE
COMPANY, Defendant.

Nos. 89 C 8011, 90 C 1264.

United States District Court,
N.D. Illinois, E.D.

Nov. 26, 1991.

Mitchell Frazen of Berditt, Bowles & Radzius, Chtd., Chicago, Ill., for Intern. Ins. Co.

John Foster and Paul Galea of Foster, Meadows & Ballard, Detroit, Mich., for Guar. Nat. Ins. Co.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

## I. INTRODUCTION

This case involves a diversity dispute between two insurance companies over coverage provided by their insurance policies written for the city of Birmingham, Michigan ("City"). Both sides have filed for summary judgment, addressing the same issue: whether the policy written by International Insurance Company ("International") covered a judgment entered against the City and several of its officials and police officers. For the reasons stated below, International's motion for summary judgment will be granted in part and denied in part. The motion filed by Guaranty National Insurance Company ("Guaranty") will likewise be granted in part and denied in part.

## II. THE FACTS

The facts of this case are not in dispute. Guaranty, a stock insurance company based in Colorado, issued Law Enforcement Officers Professional Liability Insur-

ance policies (Guaranty Policy) to the City covering July 1, 1980 to July 1, 1982. International issued a Public Officials and Employees Liability Insurance Policy (International Policy) covering the period July 1, 1982 to July 1, 1985, with an aggregate limit of $1,000,000.

In 1983, Richard Rosenbaum, his companies, and several others (collectively "Rosenbaum") filed suit in the United States District Court for the Eastern District of Michigan against the City and several of its police officers as well as several Oakland county prosecutors under 42 U.S.C. § 1983. Rosenbaum also raised several pendant state claims. The complaint alleged that a false criminal complaint and arrest warrant were issued charging Rosenbaum with conspiracy, kidnapping, extortion, and possession of stolen property.

Both insurers were notified of the action in 1983. Guaranty defended the City. On December 13, 1988, a jury returned a verdict against the defendants for false arrest, malicious prosecution, intentional interference with the advantageous economic relationship, invasion of privacy, intentional infliction of emotional distress, and a violation of civil rights. The jury awarded $2,130,500 in compensatory damages and $1,000,000 in punitive damages.

After the jury verdict, Guaranty made a written demand upon International to contribute to a settlement, including the costs of the City's defenses. Guaranty contended that it was responsible for three of the seven findings by the jury and that International was responsible for the remainder. International refused to indemnify the City. While the appeal was pending, Guaranty and the City settled the underlying action for $1,250,000, with the City paying $259,538 in punitive damages.

On October 25, 1989, International filed this suit for declaratory judgment seeking clarification on whether it was required to contribute to the City's settlement. In a ten count complaint, International claimed that under its policy the following areas are excluded from coverage: false arrest, malicious prosecution, intentional infliction of mental and emotional distress, invasion of privacy, intentional interference with economic relationships, civil rights violations by the individual defendants as well as the City, and punitive damages.[1] International also claimed that Guaranty waived any defenses to covering all of the City's settlement by undertaking the defense of the City, failing to reserve the right to deny coverage, and failing to make reasonable efforts to settle the case before trial. Guaranty and the City filed a complaint against International on the same issues. Both parties have now moved for summary judgment regarding these issues.[2]

### III. ANALYSIS

■ On the question of choice of law, the parties in this case have stipulated that Michigan law controls. Given this stipulation and the fact that the insured risk was in Michigan, the Court will apply Michigan law. Although Michigan substantive law controls the merits of the dispute, the question of whether to grant summary judgment is a matter of federal law. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir.1990).

The standards governing summary judgment motions are well settled. The task of the Court is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The Court's task in reviewing the

---

**1.** Guaranty concedes that International's policy expressly excluded from coverage the claims for false arrest and malicious prosecution. (Guaranty's Motion for Summary Judgment at 4). The Court will not address these two claims further.

**2.** The Court is perplexed as to why the parties both filed for summary judgment on identical issues. This tactic not only incurred additional expense to the parties, but forced the Court to work with four sets of briefs rather than two. Instead of clarifying each side's position, it merely doubled the Court's work and muddied the Court's consideration of the issues.

motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, the Court must view the facts and all reasonable inferences which may be drawn from them in a light most favorable to the non-movant, and where there are doubts as to whether a genuine factual dispute exists, the Court must resolve them in favor of the non-movant. *New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990).

■■■ In interpreting the International Policy, the Court will apply the following rules of construction. Under Michigan law, an ambiguous contract provision must be construed against the insurer and in favor of the insured, and exclusionary clauses in insurance policies are to be strictly construed against the insurer. *Mays v. Ins. Co. of North America*, 407 Mich. 165, 284 N.W.2d 256, 258–59 (1979). This rule of strict construction is tempered by the principle that contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. *Farm Bureau Mut. Ins. v. Stark*, 437 Mich. 175, 468 N.W.2d 498, 501 (1991) (*quoting Imperial Fire Ins. Co. v. Coos Co.*, 151 U.S. 452, 463, 14 S.Ct. 379, 381, 38 L.Ed. 231 (1894)); *Kingsley v. American Central Life Ins. Co.*, 259 Mich. 53, 242 N.W. 836 (1932)). In *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440, 444–45 (1982), the Michigan Supreme Court explained:

Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy.

\* \* \* \* \* \*

The only pertinent question, therefore, is whether the exclusionary clause in this contract is ambiguous, for if it is not ambiguous we are constrained to enforce it.

A contract is said to be ambiguous when its words may reasonably be understood in different ways.

If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances, the contract is ambiguous and should be construed against its drafter and in favor of coverage.

Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous or, indeed, fatally unclear.

Given this background of information regarding contract interpretation under Michigan law, the Court can now turn to the International Policy. In its Policy, International insured against a wide range of acts. International agreed to:

... pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act....

The policy defines the term "Wrongful Act" as:

any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance, and nonfeasance by an Insured as public official or employee of the public entity.

The exclusion provisions of International's policy provide as follows:

The Company shall not be liable to make payment for Loss in connection with any claim made against the Insureds allegedly, based upon or arising out of any one or more of the following:

5. a. any damages, whether direct, indirect or consequential, arising from, or caused by, bodily injury, personal injury, sickness, disease or death;

b. loss or criminal abstraction of, damage to or destruction of any tangible property or the loss of such property by reason of the foregoing;

6. a. false arrest, assault and battery, detention or imprisonment, or malicious prosecution;

b. defamation, including, but not limited to libel or slander;

. . . .

d. wrongful entry or eviction or other invasion of the right of private occupancy.

International claims that despite the absence of an explicit provision excluding claims of intentional interference with economic relationships, invasion of privacy, or intentional infliction of mental and emotional distress, these claims are implicitly excluded. International also claims that civil rights claims and awards of punitive damages are expressly excluded from the Policy. Guaranty and the City counter that if International's reading of the Policy is adopted, then the Policy covers nothing at all, despite an annual premium of $15,348. Guaranty adds that the exclusion for personal injury in the International Policy relates only to problems with the human body and therefore does not exclude claims for intentional interference with economic relations, invasion of privacy, or intentional infliction of emotional distress. Guaranty also contends that the International Policy does not exclude coverage for civil rights violations, invasion of privacy or punitive damages. Finally, Guaranty argues that it has not waived any rights that it has to recover under International's policy.

## A. Intentional Interference with Economic Relationships

■ The jury found that the defendants in the Rosenbaum case had intentionally interfered with Rosenbaum's economic relationships. International contends that the tort of intentional interference with economic relationships is a personal injury and therefore excluded from coverage. International argues—nonsensically—that in Michigan the tort of intentional interference with economic relationships is recognized as a personal injury because such a claim is subject to a three-year statute of limitations which covers "injury to a person or property." See Wilkerson v. Carlo, 101 Mich.App. 629, 300 N.W.2d 658, 659 (1980)

(citing M.S.A. § 27A.5805(8)). Of course, this position ignores the more likely possibility that the three year statute of limitations applies because, under the statute, interference with economic relationships is related to property.

Guaranty counters that International's policy covers intentional interference with economic relations by applying the rule of ejusdem generis. This term applies where "general words follow an enumeration of persons, or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Red Ball Leasing, Inc. v. Hartford Acc. & Indem. Co., 915 F.2d 306, 312 n. 6 (7th Cir.1990) (quoting Black's Law Dictionary). Under the exclusionary clause of International's policy, International is not liable for "any damages, whether direct, indirect or consequential, arising from or caused by, bodily injury, personal injury, sickness, disease or death." Guaranty notes that Webster's Third International dictionary defines personal injury as an "injury affecting one's physical and mental person as contrasted with one causing damage to one's property." (Guaranty's Motion for Summary Judgment at 7). Because the term "personal injury" has several possible meanings, Guaranty argues that it should be read in the context of "bodily injury," "sickness," "disease," and "death," to encompass only mental injuries resulting from fright or shock.

■ The Court agrees with Guaranty, but for a different reason. Under Michigan law, a tortious interference with contractual relationships clearly relates to loss of property and not personal injury. The elements of such a tort are (1) a contract, (2) a breach, and (3) instigation of the breach without justification by the defendant. Wood v. Herndon and Herndon Investigations, Inc., 186 Mich.App. 495, 465 N.W.2d 5, 8 (1990). Regarding the third element, "one who alleges tortious interference with a contractual or business relationship must allege the intentional do-

ing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* (*quoting Jim–Bob, Inc. v. Mehling,* 178 Mich.App. 71, 443 N.W.2d 451, 462 (1989)). Because the focus of this tort is on interference with contractual rights and in this case the contractual rights relate to property—such as interference with the sale of a painting—the Court holds that an exemption for personal injury does not preclude coverage of intentional interference with an advantageous economic relationship.

■ In the alternative, International argues that this tort is "a claim arising out of ... defamation, including but not limited to libel and slander" which is also excluded from the Policy. Guaranty counters that under Michigan law, tortious interference with economic relations is not defamation. *Wilkerson,* 300 N.W.2d at 660. In distinguishing these two claims, the appellate court in *Wilkerson* noted that other jurisdictions are split on whether tortious interference with economic relations accomplished through defamatory statements is actionable in its own right or is merely subsumed within the general category of defamation. *Id.* at 660 n. 3; *see Kollenberg v. Ramirez,* 127 Mich.App. 345, 339 N.W.2d 176 (1983). Given the fact that Michigan recognizes a distinction between these two claims, that the state of the law is unsettled outside Michigan, and that the Court must resolve ambiguities in favor of the insured, the Court holds that a claim for tortious interference with economic relations is not excluded from coverage under an exemption for defamation.

## B. Invasion of Privacy

■ The jury found that the defendants in Rosenbaum invaded the privacy of the plaintiff. International argues that invasion of privacy is a personal injury and therefore excluded from coverage. International also argues that the invasion of privacy in this case is the same as defamation and therefore excluded from coverage. Finally, International argues that

any damages from improper searches of Rosenbaum's business are excluded from the Policy as a result of "wrongful entry." Apart from renewing its argument regarding the proper definition of "personal injury" under the Policy, Guaranty claims that invasion of privacy is different from defamation. The Court will focus only on the defamation question.

■ Michigan law recognizes four types of invasions which constitute the tort of invasion of privacy:

1. Intrusion upon a plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of plaintiff's name or likeness.

*Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522, 527 n. 10 (1977) (*quoting* Prosser, *Privacy,* 48 Cal.L.Rev. 383, 389 (1960)). This case involves both types one and three. Under Michigan law, invasion of privacy overlaps with the tort of defamation. *Beaumont v. Brown,* 65 Mich. App. 455, 237 N.W.2d 501, 505 (1975), *rev'd on other grounds,* 401 Mich. 80, 257 N.W.2d 522; (*citing* Prosser, *Privacy,* at 422) ("[t]he public disclosure of private facts, and putting the plaintiff in a false light in the public eye, both concern the interest in reputation, and move into the field occupied by defamation."). Because Michigan law recognizes the tort of invasion of privacy to be the same as defamation, the Court holds that the Policy exclusion for defamation includes claims alleging invasion of privacy.

## C. Intentional Infliction of Emotional Distress

■ The jury found that the defendants in the Rosenbaum case intentionally inflicted mental and emotional distress on the plaintiff. International contends that this tort claim is a "personal injury" excluded from its policy. Curiously, International cites *Farm Bureau Mut. Ins. Co. v. Hoag,* 136 Mich.App. 326, 356 N.W.2d 630, 632–33

(1984), for the proposition that the infliction of mental and emotional distress resulting from false arrest and malicious prosecution is an injury to the person. But, the state appellate court's analysis in *Hoag* cuts against International's position in this case. The *Hoag* court held that an insurer that indemnifies "bodily injury" need not cover a claim of mental anguish. This case presents the flip side of the facts in *Hoag*, so that an *exclusion* of claims regarding "bodily injury" would not exclude an otherwise covered claim of mental anguish. In fact, *Hoag* is inapposite to this case. The term at issue here is "personal injury," which is broader than "bodily injury." *Izzo v. Colonial Penn Ins. Co.*, 203 Conn. 305, 524 A.2d 641, 645 (1987).

Although Michigan has never directly addressed this point, a number of states have held that emotional distress is a personal injury. *Kilduff v. Adams, Inc.*, 219 Conn. 314, 593 A.2d 478, 490–91 (1991); *Bates v. Superior Court of Arizona*, 156 Ariz. 46, 749 P.2d 1367 (1988); *Blanchette v. Contributory Retirement Appeal Board*, 20 Mass.App. 479, 481 N.E.2d 216 (1985); *Ex parte First Alabama Bank, N.A.*, 461 So.2d 1315, 1318 (Ala.1984); *McCroskey v. Cass County*, 303 N.W.2d 330, 336 (N.D. 1981). The Court has found no case law to the contrary, and Guaranty, tellingly, has not responded on this point. Because emotional distress is a personal injury and International's policy excludes personal injury, International is not required to indemnify the City on this claim.

## D. Civil Rights

■ The jury found that the defendants in Rosenbaum intentionally and willfully violated the civil rights of the plaintiff by either an unreasonable search, an unreasonable seizure or the deprivation of his property without due process of law. The jury also found that the City had violated Rosenbaum's civil rights through an official policy or custom. International argues that civil rights claims brought under 42 U.S.C. § 1983 are expressly excluded by its policy because they are "willful violation[s] of [a] statute committed by or with the knowledge or consent of an insured."

Guaranty argues that a violation of the United States Constitution is a "wrongful act" covered by International's policy and that, although the Policy excludes violations of statutes and ordinances, it does not exclude violations of constitutional rights. According to Guaranty, § 1983 merely provides a remedy for constitutional rights and cannot be violated itself. For support, Guaranty points to the title of § 1983, which is called "An Act to enforce the provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes."

As noted by Guaranty, Congress enacted Section 1983 to enforce provisions of the fourteenth amendment. The statute merely provides a remedy for the violation of rights created elsewhere. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 616–618, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979); *Smith v. State, Department of Public Health*, 428 Mich. 540, 410 N.W.2d 749, 755 (1987). Therefore the defendants in the Rosenbaum case did not violate § 1983 when they infringed on the plaintiff's fourth and fifth amendment rights; they violated the Constitution. The policy excludes only violations of statutes and ordinances, and the Constitution is neither of these. Because an ambiguous exclusion provision must be construed against the insured, the Court holds that the Policy does not exclude violations of the Constitution brought pursuant to § 1983.

## E. Punitive Damages

■ The jury found that the defendants in Rosenbaum were liable for punitive damages in the amount of $1,000,000. International excluded from coverage any "loss," which includes any "fines and penalties imposed by law." Punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125–2126, 60 L.Ed.2d 698 (1979); *Hartford Acc.*

& *Indem. Co. v. Hempstead,* 48 N.Y.2d 218, 422 N.Y.S.2d 47, 51, 397 N.E.2d 737, 741 (N.Y.App.1979). As such, punitive damages are not covered when a policy excludes fines. *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432, 436 (5th Cir.1962); *American Home Assur. Co. v. Fish,* 122 N.H. 711, 451 A.2d 358, 360 (1982); *see also* Restatement (Second) of Torts § 908 (1977). Therefore, International is not liable to provide coverage for any such damage awarded.

*F. Waiver*

 International claims in its complaint that Guaranty has waived any defenses to covering all of the City's settlement by undertaking the defense of the City, failing to reserve the right to deny coverage, and failing to make reasonable efforts to settle the case before trial. Guaranty moved for summary judgment on the grounds that under the doctrine of equitable subrogation, it has a right to obtain contribution from International.[3] *See, e.g. Commercial Union Ins. Co. v. Medical Protective Co.,* 426 Mich. 109, 393 N.W.2d 479 (1986). Equitable subrogation is a legal fiction which provides that a person who pays a third party's debt is substituted or subrogated to all the rights and remedies of that party. *Certain Underwriters of Lloyd's v. General Acc. Ins. Co.,* 909 F.2d 228, 232 (7th Cir.1990); *see also Home Insurance Co. v. Certain Underwriters at Lloyd's of London,* 729 F.2d 1132, 1134 (7th Cir.1984) (equitable action for contribution lies when one insurer pays a debt shared by other insurers).

 In the context of an insurance policy, the waiver issue generally applies to a dispute between the insurer and an insured, rather than between two insureds. Under the doctrine of waiver, the insurer, by its words or conduct, induces the insured to believe that coverage would not be affected by a variation from the strict requirements of the policy. *American Home*

*Assur. Co. v. Dykema, Gossett, et al.,* 811 F.2d 1077, 1081 n. 6 (7th Cir.1987) (citing 18 G. Couch, *Cyclopedia of Insurance Law* § 71.2, at 216–17 (2d rev. ed. 1983)). After an extensive search, the Court has found no legal support, and International has not cited any, for the proposition that an insurer waives any defenses to covering all of an insured's settlement by undertaking the defense of the insured, failing to reserve the right to deny coverage, and failing to make reasonable efforts to settle the case before trial. In fact, no policy reason exists for holding that Guaranty waived such a claim against International. In order to establish waiver, International must show that Guaranty intentionally and knowingly relinquished its rights against International. *See Commercial Union Ins. v. Medical Protective Co.,* 136 Mich.App. 412, 356 N.W.2d 648 (1984), *aff'd in pertinent part and remanded in part,* 426 Mich. 109, 393 N.W.2d 479 (1986). This cannot be the case here, because Guaranty kept International apprised of developments in the case and repeated its requests that International participate in both the defense and the settlement. As a matter of law, the Court holds that Guaranty has not waived its right to equitable subrogation.

## IV. CONCLUSION

For these reasons, International's motion for summary judgment is granted in part and denied in part, and Guaranty's motion for summary judgment is granted in part and denied in part.

---

**3.** Guaranty makes a one sentence argument that International does not have standing to raise this issue but has failed to cite any supporting case law or develop this argument further. Accordingly, the standing argument is waived.

*United States v. Blas,* 947 F.2d 1320, 1325 n. 5 (7th Cir.1991) (perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived).