994 F.2d 1280
 GUARANTY NATIONAL INSURANCE COMPANY, a Colorado corporation
and City of Birmingham, a municipal corporation,
Plaintiffs-Appellees, Cross-Appellants,
v.
INTERNATIONAL INSURANCE COMPANY, Defendant-Appellant,
Cross-Appellee.
INTERNATIONAL INSURANCE COMPANY, an Illinois Corporation,
Plaintiff-Appellant, Cross-Appellee,
v.
GUARANTY NATIONAL INSURANCE COMPANY, Defendant-Appellee,
Cross-Appellant.
 Nos. 92-2652, 92-2758, 92-2668 and 92-2750.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1993.
Decided June 3, 1993.
 
 James K. Horstman, Mary A. Sliwinski, Williams & Montgomery, Chicago, IL, John L. Foster, Robert H. Fortunate (argued), Paul A. Kettunen, Foster, Meadows & Ballard, Detroit, MI, for plaintiffs-appellees.
 Mitchell H. Frazen (argued), Terry M. Weyna, Burditt & Radzius, Chicago, IL, R. Christopher Cataldo, Jaffe, Snider, Raitt & Heuer, Detroit, MI, for defendant-appellant.
 Pamela G. Shea, Beler, Howlett, Bloomfield Hills, MI, for City of Birmingham.
 Before FLAUM and KANNE, Circuit Judges, and REAVLEY, Senior Circuit Judge.*
 REAVLEY, Senior Circuit Judge.
 
 
 1
 The parties dispute the coverage provided by an insurance policy written by International Insurance Company for the city of Birmingham, Michigan. The district court concluded that the policy partially covered a judgment entered against the city of Birmingham and several of its police officers. We vacate and remand.
 
 I. BACKGROUND
 
 2
 Guaranty National Insurance Company (Guaranty National) issued two annual Law Enforcement Officers Professional Liability Insurance policies to the city of Birmingham (the City) covering incidents occurring from July 1, 1980 to July 1, 1982. International Insurance Company (International) issued a Public Officials and Employees Liability Insurance policy to the City covering claims made and reported from July 1, 1982 to July 1, 1985 (the International Policy).
 
 
 3
 In 1983, Richard W. Rosenbaum, two companies owned by Rosenbaum (Birmingham Stamps and Coins, Inc., and Abaco Finance, Inc.), and Paul Tytschkowski (collectively the "Rosenbaum plaintiffs") sued the City, several Birmingham police officers, and several Oakland County prosecutors for conspiring to harass them. The Rosenbaum plaintiffs claimed that the harassment began in 1981 and was "motivated by the false and bad faith belief that [Rosenbaum] was involved in criminal activity." The Rosenbaum plaintiffs raised civil rights claims under 42 U.S.C. § 1983 and several pendent state claims under Michigan law. The City notified the two insurance companies of the Rosenbaum lawsuit, and Guaranty National defended the City and its police officers.
 
 
 4
 On December 13, 1988, a jury returned a verdict in favor of the Rosenbaum plaintiffs, finding them entitled to $2,130,500 in compensatory damages and $1,000,000 in punitive damages. As set out in the special verdict form (the "Rosenbaum verdict"), the jury found the City and its police officers liable for (1) false arrest, (2) malicious prosecution, (3) intentional interference with Rosenbaum's economic relationship, (4) invasion of privacy, (5) intentional infliction of emotional distress, (6) violation of civil rights by an unreasonable search, an unreasonable seizure, or a deprivation of property without due process of law, and (7) violation of civil rights through an official policy or custom. While an appeal was pending, the City and the other defendants settled the Rosenbaum lawsuit for $1,250,000. Guaranty National advanced the money to cover the settlement and demanded International contribute to the costs of the defense and settlement of the Rosenbaum lawsuit. But International denied coverage on the ground that the entire Rosenbaum lawsuit was based on claims that fell within express exclusions of the International Policy.
 
 
 5
 Guaranty National and the City sued International, seeking contribution from International for the costs incurred in the defense and settlement of the Rosenbaum lawsuit. International brought a separate lawsuit seeking a declaratory judgment that its policy did not provide coverage. The two lawsuits proceeded together and the parties filed cross-motions for summary judgment. In filing their motions for summary judgment, the parties relied on the Rosenbaum plaintiffs' complaint (the "Rosenbaum complaint"), the Rosenbaum verdict, and the International Policy. None of the parties provided a complete record of the Rosenbaum lawsuit.
 
 
 6
 The district court concluded that the International Policy does not cover claims for false arrest, malicious prosecution, invasion of privacy, intentional infliction of emotional distress, or punitive damages. 780 F.Supp. 546, 548 n. 1, 551-53. However, the district court did hold that the policy covers claims for intentional interference with economic relationships and violations of civil rights. Id. at 550-51, 552. Following the district court's initial opinion and order, the parties stipulated the amount International owed in light of the district court's holdings. Based on this stipulation, the district court entered a final judgment in both lawsuits, ordering International to pay $360,139 plus pre-judgment interest of $93,986. All three parties appeal.
 
 II. ANALYSIS
 A. THE INTERNATIONAL POLICY
 
 7
 The International Policy provides that International will "pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act." The policy broadly defines "Wrongful Act" as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance, and nonfeasance by an Insured as public official or employee of the public entity." The policy's definition of "Loss" excludes "fines or penalties imposed by law, or matters which may be deemed uninsurable under the law."
 
 
 8
 The broad insuring clause quoted above is drastically limited by several broad exclusion provisions. In this case, International relies on the following exclusions:
 
 
 9
 The Company shall not be liable to make payment for Loss in connection with any claim made against the Insureds allegedly, based upon or arising out of any one or more of the following:
 
 
 10
 * * * * * *
 
 
 11
 5. a. any damages, whether direct, indirect or consequential, arising from, or caused by, bodily injury, personal injury, sickness, disease or death;
 
 
 12
 b. loss or criminal abstraction of, damage to or destruction of any tangible property or the loss of use of such property by reason of the foregoing;
 
 
 13
 6. a. false arrest, assault and battery, detention or imprisonment, or malicious prosecution;
 
 
 14
 b. defamation, including, but not limited to libel or slander;
 
 
 15
 * * * * * *
 
 
 16
 d. wrongful entry, eviction or other invasion of the right to private occupancy;
 
 
 17
 * * * * * *
 
 
 18
 7. the willful violation of statute or ordinance committed by or with the knowledge or consent of an insured....
 
 
 19
 The exclusions are all prefaced with the language "based upon or arising out of." Thus, for example, the policy excludes claims "of" false arrest as well as claims "based upon or arising out of" a false arrest.
 
 
 20
 The City and Guaranty National concede that the International Policy expressly excludes from coverage claims for false arrest and malicious prosecution. Additionally, they do not challenge the district court's holding that the policy excludes from coverage claims for intentional infliction of emotional distress. Thus, the coverage issues on appeal concern the claims for (1) intentional interference with an economic relationship, (2) invasion of privacy, (3) violations of civil rights, and (4) punitive damages.
 
 
 21
 The parties agree that Michigan law governs the construction of the insurance provisions. Moreover, Michigan law is relevant in analyzing the state law claims pursued in the Rosenbaum lawsuit. We review de novo the district court's legal construction of the International Policy.
 
 
 22
 B. INTENTIONAL INTERFERENCE WITH AN ECONOMIC RELATIONSHIP
 
 
 23
 According to the Rosenbaum complaint, Rosenbaum entered into a contract with Richard and Jane Rathbone to act as a broker in selling a painting owned by the Rathbones. In 1982, two Birmingham police officers personally contacted the Rathbones, informing them that Rosenbaum was involved in illegal activities. The Rosenbaum complaint alleges that the officers "slandered and maliciously interfered" with Rosenbaum's contract. In other parts of the Rosenbaum complaint, Rosenbaum alleged that the police officers injured his business by surveilling him and by parking marked police cars near the premises of Birmingham Stamps and Coins.
 
 
 24
 International asserts that Rosenbaum's claim for intentional interference with an economic relationship was "based upon or [arose] out of ... defamation," and is thus excluded under Exclusion 6(b) of the International Policy. The district court rejected this argument and concluded that the policy covered Rosenbaum's claim for intentional interference with an economic relationship. On appeal, International contends that the district court failed to consider the "based upon or arising out of" language prefacing the enumerated exclusions.
 
 
 25
 The "based upon or arising out of" language requires us to examine the conduct underlying the Rosenbaum lawsuit, instead of the legal theories attached to the conduct. See Illinois Employers Ins. v. Dragovich, 139 Mich.App. 502, 362 N.W.2d 767, 769 (1984); see also United Nat'l Ins. Co. v. Entertainment Group, Inc., 945 F.2d 210, 213-14 (7th Cir.1991). The conduct that supported Rosenbaum's claim for intentional interference with an economic relationship encompassed more than defamatory statements. To recover for defamation, a plaintiff must prove: (1) a false and defamatory statement; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) actionability of the statement or existence of a special harm. See Smith v. Fergan, 181 Mich.App. 594, 450 N.W.2d 3, 4 (1989). However, to recover for intentional interference with economic relationships, a plaintiff must often show that the defendant purposely invaded a contractual right. See Prysak v. R.L. Polk Co., 193 Mich.App. 1, 483 N.W.2d 629, 635 (1992) ("[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.") (citations omitted); Pryor v. Sloan Valve Co., 194 Mich.App. 556, 487 N.W.2d 846, 848-49 (1992) (to show tortious interference with business relations, plaintiff must prove a valid business relationship, knowledge of relationship on part of interferer, intentional interference inducing or causing breach or termination of relationship, and damages) (emphasis added). According to the Rosenbaum complaint, the Birmingham police officers maliciously sabotaged one of Rosenbaum's contractual relationships. This intentional interference with a contract goes beyond defamation. The fact that the conduct underlying Rosenbaum's intentional-interference claim might have also supported a cause of action for slander does not necessarily mean that Rosenbaum's intentional-interference claim was "based upon or [arose] out of" defamation. As the district court recognized, Michigan law recognizes a distinction between defamation and tortious interference with economic relationships. See 780 F.Supp. at 551 (citing Wilkerson v. Carlo, 101 Mich.App. 629, 300 N.W.2d 658, 660 (1980)); see also Heritage Optical Center, Inc. v. Levine, 137 Mich.App. 793, 359 N.W.2d 210, 213 (1984) (plaintiff may bring an action for slander as well as tortious interference with business relationships, even though the two torts might overlap).
 
 
 26
 We affirm the district court's holding that Rosenbaum's claim for tortious interference with an economic relationship is covered by the International Policy.
 
 C. INVASION OF PRIVACY
 
 27
 The Rosenbaum jury found that the City and its police officers invaded the privacy of Rosenbaum and Tytschkowski. Michigan tort law recognizes four types of privacy invasions:
 
 
 28
 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;
 
 
 29
 2. Public disclosure of embarrassing private facts about the plaintiff;
 
 
 30
 3. Publicity which places the plaintiff in a false light in the public eye; and
 
 
 31
 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.
 
 
 32
 Beaumont v. Brown, 401 Mich. 80, 257 N.W.2d 522, 527 & n. 10 (1977). The Rosenbaum complaint raises allegations that fall within the first and third types of invasions: intrusion into private affairs and publicity that places plaintiffs in a false light. International contends that the invasion-of-privacy claims fall under Exclusion 6(b) which excludes claims based upon or arising out defamation. While there is some overlap between Michigan's defamation tort and Michigan's invasion-of-privacy tort, we find no merit to International's argument that the invasion-of-privacy claims in the Rosenbaum lawsuit are equivalent to defamation and therefore excluded from coverage. We fail to understand how the intrusions into the Rosenbaum plaintiffs' private affairs (the first type of privacy invasion) fall within the defamation exclusion of the International Policy.
 
 
 33
 Alternatively, International argues that the invasion-of-privacy claims fall within Exclusion 5, which excludes "any damages, whether direct, indirect or consequential, arising from, or caused by bodily injury, personal injury, sickness, disease or death" (emphasis added). International argues that invasion of privacy is a "personal injury." We recognize that the term "personal injury" is sometimes defined broadly to include not only health-related injuries but also invasions of "personal" rights or interests. See Black's Law Dictionary 707 (5th ed. 1979) ("[T]he term ["personal injury"] is also used (chiefly in statutes) in a much wider sense ... as including any injury which is an invasion of personal rights, and in this signification it may include such injuries to the person as libel or slander, criminal conversation, malicious prosecution, false imprisonment, and mental suffering."). In fact, some insurance policies define "personal injury" to include invasion of privacy, false arrest, detention, imprisonment, malicious prosecution, wrongful entry, and defamation. See, e.g., San Diego Nat'l Bank v. Aetna Casualty & Sur. Co., 807 F.Supp. 95, 97 (S.D.Cal.1992); State Farm Fire & Casualty Co. v. Hiermer, 720 F.Supp. 1310, 1316 (S.D.Ohio 1988), aff'd, 884 F.2d 580 (6th Cir.1989); Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 489 N.W.2d 431, 433 (1992).
 
 
 34
 Yet, for the following reasons, we are unwilling to employ such a broad definition here. First, the terms in Exclusion 5 surrounding "personal injury" (bodily injury, sickness, disease, or death) indicate a reference to health-related injuries (physical or mental health), rather than to all invasions of personal rights.
 
 
 35
 Second, if Exclusion 5 excludes invasion of privacy under the definition of "personal injury," it would presumably also exclude such things as false arrest, imprisonment, malicious prosecution, and wrongful entry. The fact that these latter invasions of personal rights (or personal interests) are explicitly excluded in Exclusion 6 supports a more narrow reading of Exclusion 5 and the term "personal injury." In other words, Exclusion 6 would be largely redundant if we were to broadly construe Exclusion 5 as excluding all invasions of personal rights. Exclusion 6, which excludes many invasions of personal rights, is the exclusion that we should consider to determine whether the International Policy excludes claims for invasion of privacy. Exclusion 6(d) excludes claims based upon or arising out of "wrongful entry or eviction or other invasion of the right to private occupancy" (emphasis added). While excluding certain types of invasions of privacy, Exclusion 6(d) fails to exclude the privacy invasions involved in the Rosenbaum lawsuit, such as intrusion into private affairs.
 
 
 36
 Third, this court is bound by the Michigan rule requiring courts to strictly construe insurance exclusion clauses in favor of the insureds. See Group Ins. Co. v. Czopek, 440 Mich. 590, 489 N.W.2d 444, 447 (1992). We thus refuse to broadly read Exclusion 5 of the International Policy to encompass invasion-of-privacy claims.
 
 
 37
 Neither Exclusion 6(b) (defamation exclusion) nor Exclusion 5 (personal injury exclusion) is applicable, and, therefore, we hold that the International Policy provides coverage for the invasion-of-privacy claim.
 
 D. CIVIL RIGHTS VIOLATIONS
 
 38
 The jury in the Rosenbaum lawsuit found that Birmingham police officers violated Rosenbaum's and Tytschkowski's civil rights by (1) conducting an unreasonable search, (2) conducting an unreasonable seizure, or (3) depriving them of property without due process of law. Furthermore, the jury found that the City violated Rosenbaum's civil rights through an official policy or custom which was carried out by Birmingham police officers.
 
 
 39
 In the district court, International argued that the civil rights claims brought under 42 U.S.C. § 1983 are excluded as "willful violation[s] of [a] statute" (Exclusion 7). Alternatively, International argued that each of the acts underlying the civil rights violations is expressly excluded from coverage. The district court rejected International's first argument and held that the International Policy covered the civil rights claims, because they rest on constitutional and not statutory violations. But the court failed to discuss International's second argument. On appeal, International relies solely on its second argument.
 
 
 40
 As discussed above, we must consider the conduct underlying the Rosenbaum lawsuit, not the legal theories of the lawsuit. The Rosenbaum complaint alleges that, on at least two separate occasions, Birmingham police officers illegally searched Rosenbaum's business, Birmingham Stamps and Coins. The Rosenbaum complaint also alleges that the police officers falsely arrested Rosenbaum and Tytschkowski. The Rosenbaum complaint further alleges that the police officers seized some property (jewelry and a handgun) in violation of Rosenbaum's constitutional rights.
 
 
 41
 Liability for the unreasonable searches is excluded from coverage under the provision that excludes "wrongful entry or eviction or other invasion of the right of private occupancy." As for the arrest of Rosenbaum and Tytschkowski, the International Policy explicitly excludes claims based upon or arising out of a false arrest. Finally, we agree with International's contention that the deprivation-of-property claims fall under Exclusion 5(b) which excludes claims based upon or arising out of "loss or ... damage to or destruction of any tangible property or the loss of use of such property by reason of the foregoing."
 
 
 42
 We conclude that the International Policy excludes from coverage the conduct underlying the civil rights violations.
 
 E. PUNITIVE DAMAGES
 
 43
 The jury found that the Rosenbaum plaintiffs were entitled to punitive damages for the civil rights violations. The International Policy provides coverage for "Loss" which the policy defines as "any amount which the Insureds are legally obligated to pay ... for any claim or claims made against them ... provided always, however, such subject of loss shall not include fines or penalties imposed by law" (emphasis added). Relying on the language "fines or penalties," the district court determined that the International Policy does not provide coverage for punitive damages. 780 F.Supp. at 552-53.
 
 
 44
 We need not decide here whether punitive damages fit within the plain and ordinary meaning of "fines or penalties." The punitive damages awarded to the Rosenbaum plaintiffs were based only on their § 1983 civil rights claims and not on their state law claims. We determined above that the International Policy excluded the conduct underlying the civil rights claims and that therefore the policy did not cover the City's and police officers' liability for those claims. The punitive damage award was based on the same underlying conduct, even though the award required an additional finding that the police officers acted intentionally, wantonly, or with callous disregard. The International Policy provides no coverage for punitive damages connected with civil rights claims that are themselves excluded from coverage.
 
 III. CONCLUSION
 
 45
 The International Policy provides coverage for the intentional-interference-with-economic-relationship claim and the invasion-of-privacy claims. The policy does not cover the punitive damages or the claims for civil rights violations. The proper allocation of financial obligations must be reexamined in light of our holdings.
 
 
 46
 JUDGMENT VACATED; CAUSE REMANDED.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation