**VALASSIS COMMUNICATIONS, INC., and David Brandon, Plaintiffs–Appellants,**

v.

**AETNA CASUALTY & SURETY COMPANY, Defendant–Appellee.**

**No. 95–1635.**

United States Court of Appeals, Sixth Circuit.

Argued May 24, 1996.

Decided Oct. 9, 1996.

---

Andrew T. Baran, William H. Horton (argued and briefed), Cox, Hodgman & Giarmarco, Troy, MI, for Plaintiffs–Appellants.

Francis R. Ortiz, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Thomas H. Howlett (briefed), Cathy A. Simon (argued), Ross, Dixon & Masback, Washington, DC, for Defendant–Appellee.

Before: KRUPANSKY, DAUGHTREY, and MOORE, Circuit Judges.

KRUPANSKY, Circuit Judge.

The plaintiffs-appellants, Valassis Communications and David Brandon, appealed the lower court's order granting Aetna's motion to dismiss the complaint for failure to state a claim. Specifically, the plaintiffs argued that the lower court erred (1) in reconsidering its original order denying the motion to dismiss, and (2) in concluding that the express language of Valassis' policy with Aetna barred the action.

Valassis Communications purchased an officers' and directors' insurance policy from Aetna, covering the period March 10, 1994 to March 10, 1995. Exclusion (A)(4) of Section IV of the policy, entitled "Conditions and Limitations," excluded any claim "based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, *any actual or alleged libel or slander or oral or written publication of defamatory or disparaging material.*" (Emphasis added). However, Endorsement 8 to the policy amended this Section to read:

> In consideration of the premium charged, Section IV Conditions and Limitations (A) Exclusion (4) is amended by the deletion of the words "or oral or written publication of defamatory or disparaging material" and of the words "malicious use or abuse of process."

> All other terms, conditions and limitations of this Policy shall remain unchanged, including but not limited to the

maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

Valassis engages in the business of creating and distributing free-standing inserts ("FSIs"). FSIs are promotional booklets featuring discount coupons, refunds, sweepstakes, promotions, and advertisements that are inserted into newspapers for distribution to consumers. Valassis distributes its FSIs through more than 350 newspapers accessing more than 50 million households throughout the United States each week.

In 1993, Sullivan Marketing, Inc. ("Sullivan") and its parent, Sullivan Graphics ("Graphics"), newcomers to the FSI business, filed a complaint against Valassis in the United States District Court for the Southern District of New York, *Sullivan Marketing, Inc. v. Valassis Communications, Inc., et al.*, Case No. 93–Civ. 6350, 1994 WL 177795, which it subsequently amended to include David Brandon ("Brandon"), the President and Chief Executive Officer of Valassis, alleging in Count XV of the complaint a cause of action against Valassis/Brandon for defamation, and in Count XVI, a claim for tortious interference with "prospective business relationships and reasonable business relations." Both causes of action were anchored in Brandon's defamatory statements, which allegedly forced Sullivan/Graphics to withdraw a $185 million private bond offering, thereby forestalling their entry into the FSI business.

Valassis/Brandon have conceded that the *Sullivan* complaint alleged that Valassis/Brandon embarked upon an unprecedented campaign to deny Sullivan/Graphics the capital it needed to compete by discrediting and undermining the private debt ceiling of Sullivan/Graphics, with the intent and effect of depriving Sullivan/Graphics access to the capital necessary to enter the FSI business. Valassis/Brandon further have conceded that the *Sullivan* complaint properly pleaded a series of overt predatory acts, all of which arose from a seminal telephonic conference call initiated by Brandon to numerous investors, investment bankers, and financial institutions, including representatives from Salomon Brothers, Inc., Dillon Read, Kidder Peabody, Barrington Research, Smith Bar-

ney, Mabon Securities, Montecito Research, TransAmerica, and Omega Advisors. Brandon's lengthy prepared commentary was calculated to disparage and defame Sullivan, Graphics, and their Offering Memorandum, and was intended to undermine Sullivan/Graphics' efforts to raise capital, and to interfere with their prospective business advantage.

Valassis/Brandon further have admitted that the *Sullivan* plaintiffs asserted, in their complaint, that Brandon disparagingly misrepresented to the investment community that "Sullivan's Offering Memorandum [ (1) ] is misleading and inaccurate," (2) endeavors to "mislead the investment community of the real situation that exists in today's FSI industry," (3) "forgo[es] accuracy and completeness in [ ] favor of expediency," (4) contains "false claims and misleading statements and errors of omission and inaccurate facts," and (5) "does not disclose the real trends and realistic scenarios" in the FSI business, among other things. Valassis/Brandon also have conceded that the plaintiffs' complaint properly pleaded that, as a result of Brandon's conference call with members of the financial community, Sullivan's Offering received significant negative publicity, and that thereafter Valassis/Brandon collected copies of the negative publicity and distributed it, along with selected pages of the Offering Memorandum, to potential purchasers of the Offering. The *Sullivan* complaint asserted that this condemning review was circulated in an effort to further discourage potential investors from participating in Sullivan's Offering, with the intent to harm Sullivan/Graphics by depriving them of access to capital.

On June 30, 1994, the parties settled the *Sullivan* law suit. Valassis agreed to pay $14 million to resolve all claims against it and Brandon. Subsequently, Valassis demanded that Aetna reimburse it for its losses, including reasonable and necessary legal fees and expenses incurred in defense of the *Sullivan* litigation that Aetna was required to pay under the terms and conditions of its officers' and directors' insurance policy. After Aetna refused, Valassis/Brandon filed the instant action, charging that Aetna's denial

of coverage was a breach of its insurance contract. The lower court initially denied Aetna's motion to dismiss the lawsuit. However, it subsequently granted Aetna's motion for reconsideration and dismissed the plaintiffs' complaint. It ruled that Exclusion (A)(4) of the Aetna insurance policy, as amended by Endorsement 8, barred the claim.

■ Plaintiffs–Appellants have argued that because Aetna's first motion to dismiss and its motion to reconsider joined the same issues, reconsideration should have been denied pursuant to a local rule of the district court, which states:

> The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. L.R. 7.1(h). This Circuit will "not ordinarily enforce local rules of practice when the district court, as here, does not enforce them." *United States v. Kingston*, 922 F.2d 1234 (6th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2054, 114 L.Ed.2d 460 (1991); *see also Sinito v. United States*, 750 F.2d 512, 515 (6th Cir.1984) ("[L]ocal rules ... are designed as internal housekeeping rules·to promote the efficient operation of the district courts; they are not meant to confer rights on litigants."). Thus, the local rule of the Michigan district court conferred no rights upon the appellants. Moreover, Aetna's motion for reconsideration presented novel arguments which the trial court had apparently not considered before its denial of Aetna's first motion to dismiss the plaintiffs' action. When Aetna directed the trial court's attention to its oversight and error in failing to consider the impact of Endorsement No. 8, it reconsidered its initial ruling and granted the defendant's motion to dismiss.

■ Obvious from the trial court's reversal of its initial refusal to grant Aetna's motion to dismiss the complaint for failure to state a cause of action, it implicitly concluded, upon reconsideration, that its original ruling was palpably defective. In any event, the district court is the final arbiter of its own local rules. *See Kingston*, 922 F.2d at

1240; *Kerans v. Porter Paint Co.*, 49 Fair Empl. Prac. Cas. (BNA) 656, 1989 WL 5770 (6th Cir. Jan.24, 1989); *Sinito*, 750 F.2d at 515. Consequently, the district court did not err in recognizing Aetna's motion to dismiss.

■ Dismissals of complaints for failure to state a claim upon which relief can be granted are subject to de novo review. *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994); *Mayer v. Mylod*, 988 F.2d 635, 637–38 (6th Cir.1993). Initially, basic Michigan insurance law provides that the instant Michigan insurance contract must be construed in accordance with Michigan law. *Michigan Millers Mutual Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864, 868 (1994). It further directs that courts are mandated to enforce the terms of an insurance contract as written, and may not read into an insurance policy a nonexistent ambiguity; when the terms of a policy are plain and unambiguous, their plain meaning should be given effect. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 397 (1991); *Pinckney Community Schools v. Continental Casualty Co.*, 213 Mich.App. 521, 540 N.W.2d 748 (1995). Insurance contract law also dictates that when an endorsement deletes language from a policy, a court must not consider the deleted language in its interpretation of the remaining agreement. 43 Am.Jur.2d *Insurance* § 275 (1982); *Ryan v. Mountain States Helicopter, Inc.*, 107 Idaho 150, 686 P.2d 95, 97–98 (App.1984); *Hagenah v. Lumbermen's Mut. Casualty Co.*, 241 Wis. 226, 5 N.W.2d 760, 761 (1942). To determine if an agreement, as modified, is ambiguous, the court examines the language and assigns the "plain and unambiguous ... meaning" to its remaining words. *Pinckney*, 540 N.W.2d at 751.

■ In the instant case, absent the deleted language of Endorsement 8, Exclusion (A)(4) reads in pertinent part as follows:

> [Aetna will not be liable for any claim] based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving *any actual or alleged libel or slander* ....

Assigning the plain and unambiguous meaning to the remaining words of the language in the policy, it provides that any claims based directly on, or arising indirectly out of, libel or slander are excluded from coverage. *Pinckney,* 540 N.W.2d at 751. After the district court correctly decided that the deleted language was redundant and constituted excess verbiage that did not change the meaning of Exclusion (A)(4) of the Aetna policy, it concluded that the Valassis/Brandon claim for contribution was excluded from coverage under its terms and conditions because the tortious interference with contract claim was embraced by Aetna's libel, slander, and defamation disclaimer.

Plaintiffs rely upon *Guaranty National Insurance Co. v. International Insurance Co.,* 994 F.2d 1280 (7th Cir.1993), to support a different resolution than the disposition imposed by the district court in this case. The thrust of their argument is an effort to distinguish between the legal theories of defamation and tortious interference with a contract. The plaintiffs contend that because, in some instances, each theory may be considered independently of the other, and because each may be cognizable as a separate cause of action, contractual language that excludes the coverage of one does not necessarily exclude the other. *Guaranty National* endorses the plaintiffs' argument to the extent that the Seventh Circuit in that case found that *some* acts of tortious interference were neither " 'based upon [n]or aris[e] out of' " defamation. *Id.* at 1284 (quoting the language at issue in that case). Nevertheless, in *Guaranty National* the court conceded that the exclusion of one claim may also exclude another if they are genuinely mutually inclusive. *See id.* at 1286 ("[W]e must consider the conduct underlying the ... lawsuit, not the legal theories of the lawsuit.").

The genesis of the Seventh Circuit's decision in *Guaranty National* was an action initiated by the City of Birmingham, Michigan ("City") and Guaranty National Insurance Company ("Guaranty National") against the International Insurance Company ("International") seeking contribution to the cost of defense of an action and satisfaction of a special jury verdict against the City and several of its police officers and prosecutors for

1. false arrest;
2. malicious prosecution;
3. invasion of privacy;
4. intentional infliction of emotional distress;
5. violation of civil rights by an unreasonable search and seizure and a deprivation of property without due process of law; and
6. intentional interference with economic relationships.

International disclaimed liability pursuant to an exclusionary clause exempting its coverage of the City for false arrest, detention or imprisonment, malicious prosecution, defamation (including but not limited to libel or slander), and tortious interference with business relationships. In the seminal action, the plaintiffs alleged that their cause of action for tortious interference with contractual or business relationships arose as a result of libelous, slanderous, and defamatory disclosures of private facts to third parties, knowing that the statements were false, *in addition to* continuously surveilling them in marked police cars and other calculated harassment. The City and National Guaranty did not deny that the International policy excluded coverage of all claims except

1. intentional interference with economic relationships;
2. invasion of privacy;
3. violation of civil rights; and
4. punitive damages.

Of concern in the appellate review presently before this court is the precedential value of the Seventh Circuit's treatment of the exclusionary clause concerning intentional interference with economic relationships, as urged by the City and Guaranty National. Both the City and Guaranty National argued that their cause of action for intentional interference with economic relationships was cognizable as an independent cause of action and was not embraced within the defamation, libel, and slander exclusionary clause of the insurance policy, as rationalized by International. The Seventh Circuit endorsed that argument.

Unfortunately, this appellate review does not have the benefit of a greater insight into the reasoning underlying the disposition of that issue by the Seventh Circuit. It would appear that its resolution was fact specific within a context of multiple, separate, and overlapping causes of action, some of which were excluded from coverage in the International policy and others that were not.

The Seventh Circuit noted:

[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.

*Id.* at 1284 (quoting *Prysak v. R.L.Polk Co.,* 193 Mich.App. 1, 483 N.W.2d 629, 635 (1992)).

The court then concluded in a perfunctory manner:

According to the Rosenbaum complaint, the Birmingham police officers maliciously sabotaged one of Rosenbaum's contractual relationships. This intentional interference with a contract goes beyond defamation. The fact that the conduct underlying Rosenbaum's intentional-interference claim might have also supported a cause of action for slander does not necessarily mean that Rosenbaum's intentional-interference claim was "based upon or [arose] out of" defamation. As the district court recognized, Michigan law recognizes a distinction between defamation and tortious interference with economic relationships. *See [International Ins. Co. v. Guaranty Nat. Ins. Co.]* 780 F.Supp. [546] at 551 [(N.D.Ill.1991)] (citing *Wilkerson v. Carlo,* 101 Mich.App. 629, 300 N.W.2d 658, 660 (1980)); *see also Heritage Optical Center, Inc. v. Levine,* 137 Mich.App. 793, 359 N.W.2d 210, 213 (1984) *(PLAINTIFF MAY BRING AN ACTION FOR SLANDER AS WELL AS TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS, EVEN THOUGH THE TWO TORTS MIGHT OVERLAP )*

*Id.* (emphasis added).

The instant appellate review does not confront this court with the task of distinguishing between multiple overlapping independent causes of action which could justify the conclusion of *Guaranty National.* The Valassis/Brandon claim was not, as in *Guaranty National,* the consequence of two or more independent causes of action which may have overlapped for the simple reason that it resulted from a single tortious act which proximately caused plaintiffs' damage.

As already discussed at length, the proximate cause of the Sullivan/Graphic injury and loss, as pleaded in their complaint, was the single tortious act of defamation resulting from the libel and slander conveyed in the seminal telephonic conference call initiated by Brandon/Valassis to numerous investors and financial institutions, including representatives from Salomon Brothers, Inc., Dillon Read, Kidder Peabody, Barrington Research, Smith Barney, Mabon Securities, Montecito Research, TransAmerica, and Omega Advisors, which was calculated to disparage and defame Sullivan/Graphics and their Offering Memorandum and intended to undermine Graphics' efforts to raise capital on its own behalf to enter and finance its FSI business venture. Moreover, Valassis/Brandon have further conceded that plaintiffs' complaint pleaded that, as a result of Brandon's conference call with members of the financial community, the Offering received significantly negative publicity which Brandon/Valassis collected and distributed along with selected pages of the fallaciously discredited Offering Memorandum to potential purchasers of the Offering in a further effort to dissuade potential customers from participating in the Graphics Offering.

To summarize, in *Guaranty National,* the tortious interference claim against International was based in part upon specific wrongful acts entirely *UNRELATED,* both substantively and temporally, to the asserted defamation context. Consequently, even if the allegations of defamation arising from libel and slander had been eliminated from the underlying complaint in *Guaranty National,* the remaining allegations pertaining to other independently cognizable activities would have, in the opinion of the Seventh Circuit, supported a viable claim of tortious interference with a business relationship.

By contrast, stripped of the pleaded defamatory statements attributed to Brandon, the *Sullivan* action for a claim for tortious interference could not have survived the Valassis/Brandon motion to dismiss for failure to state a cause of action. Thus, under the circumstances of the instant appellate review, the allegations incorporated into the tortious interference claim were inherent only with the asserted defamation conduct and as a consequence, because the defamation and tortious interference with prospective economic advantage as asserted against Valassis/Brandon fall within the scope of the Aetna defamation exclusion clause, the district court properly dismissed the complaint.

 Finally, Valassis/Brandon has charged that the trial court committed error in concluding that Aetna had no "duty to defend" Valassis/Brandon against the initial *Sullivan* lawsuit. It is true that, pursuant to Michigan law, if an insurer has undertaken a duty to defend its policyholder that "duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." *Detroit Edison v. Michigan Mut. Ins. Co.*, 102 Mich.App. 136, 301 N.W.2d 832, 835 (1980).

Relying upon a partial quotation from endorsement No. 26 of the policy that Aetna *"will pay Defense Expenses on behalf of"* Brandon, plaintiff argues that the policy "create[s] a duty to defend." In advancing this less than candid premise, Valassis/Brandon conveniently omits language in the policy that unequivocally states that "[n]othing in this paragraph is intended, nor shall it be construed, to create any duty to defend on the part of" Aetna.

It should be noted that the Aetna policy does not contain a separate "duty to defend" clause. Its proviso is to reimburse Valassis/Brandon for defense costs as part of the "losses" covered by the policy. Valassis/Brandon fail to recognize the distinction between a "recovery of defense costs" and a "duty to defend." The former includes defense costs as a part of the losses for which the Aetna policy will reimburse, *if covered*. A commitment by the insurance company to reimburse the defense costs of the insured does not create a duty to defend on the part of the insurance company. *See Board of Trustees of Michigan State University v. Continental Casualty Co.*, 730 F.Supp. 1408, 1411, 1414 (W.D.Mich.1990). This is especially true when the policy specifically declares that *"[n]othing in this paragraph is intended, nor shall it be construed, to create any duty to defend on the part of"* Aetna. (Emphasis added). Thus, the district court's conclusion that Aetna did not undertake the defense of Valassis/Brandon in the *Sullivan* lawsuit was not erroneous.

Accordingly, the decision of the lower court is AFFIRMED.