FARM BUREAU MUTUAL INSURANCE COMPANY OF
MICHIGAN v HOAG

Docket No. 71828. Submitted May 10, 1984, at Lansing.—Decided
July 16, 1984.

In June, 1971, Richard Morris was arrested and charged with
first-degree murder based upon the investigation of A. Eugene
Hoag, then an undersheriff for the Eaton County Sheriff's
Department. In April, 1972, Morris was tried and convicted of
first-degree murder. In December, 1974, the Court of Appeals
reversed that conviction and remanded the case for a new trial
on a charge of second-degree murder. The second trial ended in
a mistrial based upon the alleged misconduct of Hoag, and
ultimately all charges against Morris were dismissed on the
basis that Hoag had been derelict in his duty and had supplied
false evidence to the prosecutor and the court. In 1978, Morris
brought suit in federal court against Hoag and Ohio Casualty
Insurance Company (Hoag's surety) seeking damages on the
basis of denial of his civil rights. The complaint alleged that
Hoag's misconduct denied him his rights, privileges and immu-
nities under the constitution and resulted in incarceration for
some four years, humiliation, public ridicule, loss of reputation,
and mental anguish and suffering. During the pendency of the
federal court action, Farm Bureau Mutual Insurance Company
brought a declaratory judgment action in Kent Circuit Court,
naming among others as defendants Hoag, Morris and six other
insurance companies who had issued insurance or bonds on
behalf of either Hoag or Eaton County. Among the defendants
was Royal Globe Insurance Company, which had been Eaton
County's liability insurer for the period of July 22, 1970, to
July 22, 1973, under a policy which provided that it would "pay
on behalf of the insured all sums which the insured shall
become legally obligated to pay as damages because of bodily

References for Points in Headnotes
[1] 44 Am Jur 2d, Insurance § 1405 et seq.
[2] 43 Am Jur 2d, Insurance § 269 et seq.
[3] 44 Am Jur 2d, Insurance §§ 1634, 1635.
[4] 43 Am Jur 2d, Insurance § 563.

injury or property damage". Farm Bureau and the insurance companies other than Royal Globe which had been named in Farm Bureau's declaratory judgment action settled with Morris in the federal court action. Morris then filed a cross-claim against Royal Globe seeking a determination of whether Royal Globe had a duty to defend Hoag in the federal court action and was liable for any judgment against Hoag which might be rendered in the federal court action. Royal Globe denied any obligation to defend Hoag in the federal court action and any liability for any judgment rendered in that action against Hoag on the basis that Morris's claims in federal court were not for bodily injury or property damage, the risks insured under its policy with Eaton County. Morris moved for summary judgment. The Kent Circuit Court, Stuart Hoffius, J., held that Hoag was insured under the Royal Globe policy, but that Royal Globe had no duty to defendant Hoag in the federal court case and was not liable for payment of any judgment entered in the federal court case by reason of the fact that Morris's claims in the federal court case were not for a bodily injury, the risk insured by Royal Globe. The court thereafter dismissed with prejudice Morris's cross-claim against Royal Globe. Morris appealed. *Held:*

1. Insurance contracts are to be liberally construed in favor of the insured; however, where the policy language is unambiguous, the terms of the policy must be enforced.

2. The term "bodily injury" as used in the Royal Globe policy is unambiguous and is understood to mean actual physical hurt or harm to a human body. Since the claims by Morris in the federal court case alleged no physical injury resulting from Hoag's actions, Royal Globe was not required to defend Hoag in the federal court action.

Affirmed.

1. INSURANCE — DUTY TO DEFEND.

The duty of an insurer to defend the insured depends upon the allegations in the complaint of the third party in the action against the insured and is not limited to meritorious suits but may extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage; the insurer has a duty to defend if there are any theories of recovery that fall within the policy, and in a case of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy the doubt must be resolved in favor of the insured.

2. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

   An insurance contract which is ambiguous is to be liberally construed in favor of the insured; however, if the policy language is clear and unequivocal its terms must be enforced; the courts will not rewrite the contract.

3. INSURANCE — KNOWLEDGE OF POLICY TERMS.

   An insured must be held to a knowledge of the terms and conditions contained in his insurance policy, even though he may not have read it.

4. INSURANCE — BODILY INJURY.

   The term "bodily injury" as used in a liability insurance policy has been generally held to be unambiguous and is understood to mean actual physical hurt or harm to the human body; the term "bodily injury" does not include humiliation and mental anguish and suffering.

*Charles E. Kovsky,* for Richard Morris.

*Smith & Brooker, P.C.* (by *Thomas A. Connolly*), for Royal Globe Insurance Company.

Before: V. J. BRENNAN, P.J., and R. B. BURNS and C. R. COLEMAN,* JJ.

V. J. BRENNAN, P.J. Richard Morris, appeals from a May 19, 1983, order dismissing with prejudice his cross-claim against Royal Globe Insurance Company, following a hearing on his motion for summary judgment pursuant to GCR 1963, 117.2(3). The appeal is timely and as of right.

This case involves construing a policy of insurance issued by Royal Globe to Eaton County. The factual background is based upon the findings of the circuit court.

The original action was one for declaratory judgment instituted by Farm Bureau Mutual Insurance Company, seeking a determination of its

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

liability under a policy of insurance issued to the County of Eaton. Named as defendants in Farm Bureau's complaint, among others, were A. Eugene Hoag, former Sheriff of Eaton County, Morris, and six insurance carriers.

Morris was arrested and charged with murder in Eaton County on June 23, 1971. At that time, Hoag was a lieutenant in the sheriff's department and was placed in charge of the investigation of that homicide. Morris was convicted, following a jury trial, of first-degree murder on April 12, 1972. This Court, in an unpublished per curiam opinion, reversed the conviction and remanded the case to the circuit court for a new trial on the charge of second-degree murder. *People v Morris,* (Docket No. 14273, decided December 4, 1974 [unreported]).

The attempted retrial of Morris resulted in mistrial due to the alleged misconduct of the investigating officer, Hoag. Morris subsequently moved for dismissal of all charges because of the misconduct of Hoag. A three judge panel of the circuit court heard this motion and, on May 13, 1976, concluded that Hoag had been derelict in his duty and supplied false evidence to the prosecutor. Therefore, the panel dismissed the charges. This dismissal of Morris's charges was affirmed by this Court on August 22, 1977. See *People v Morris,* 77 Mich App 561; 258 NW2d 559 (1977).

Morris subsequently brought suit on July 10, 1978, in the United States District Court for the Western District of Michigan naming Hoag and Ohio Casualty Insurance Company in a complaint, alleging denial of Morris's civil rights and other theories of recovery. While the federal suit was pending, Farm Bureau filed this suit for declaratory judgment naming as defendants Hoag, Morris and all the insurance carriers who carried insur-

ance or bonds on the county. Thereafter, Farm Bureau and all of the insurance carriers, with the exception of Royal Globe, had settled their claims with Morris in the federal court action.

Royal Globe was the county's liability insurer for the period running from July 22, 1970, until July 22, 1973. It was notified of the suit against Hoag in federal court on September 24, 1980, and again on December 19, 1980. However, Royal Globe denied liability and refused to defend Hoag in the federal court action. Royal Globe claimed that Hoag was not an insured under the policy and asserted that Hoag's actions were excluded from coverage by the policy issued to the county.

Morris filed a cross-claim against Royal Globe, asking the court to declare that Royal Globe was obligated to defend Hoag in the federal court action. Morris thereafter moved for summary judgment on his cross-claim against Royal Globe. This motion was argued on January 19, 1983.

The circuit court's opinion, issued May 5, 1983, found that Hoag was an insured under the Royal Globe policy. The court, however, found that a common sense construction of the term "bodily injury" as used in the Royal Globe policy did not include those injuries described in Morris's suit in federal court against Hoag and held, therefore, that Royal Globe's policy did not insure Hoag for purposes of the suit in federal court. Finally, the circuit court determined that Morris had standing to prosecute the suit against Royal Globe for purposes of determining whether Hoag was a named insured under the Royal Globe policy. The circuit court, finding that its opinion was dispositive of the rights of the parties, dismissed Morris's action with prejudice.

The issue for determination is whether Royal

Globe's liability policy issued to the county covers any of the claims asserted by Morris against Hoag in the federal court suit.

The liability and comprehensive insurance portions of the policy both provide:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *bodily injury* or property damage to which this insurance applied, * * *." (Emphasis added.)

This issue requires application of two basic and well-established areas of insurance law: an insurer's duty to defend and judicial construction of an insurance contract. In *Iacobelli Construction Co, Inc v Western Casualty & Surety Co,* 130 Mich App 255, 264-265; 343 NW2d 517 (1983), the following passage is quoted regarding an insurer's duty to defend the insured:

" 'The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. * * * In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.' (Emphasis in original. Citations omitted.) *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1980)."

See also *Reurink Brothers Star Silo, Inc v Mary-*

*land Casualty Co,* 131 Mich App 139, 143; 345 NW2d 659 (1983).

Ambiguities in insurance contracts are to be liberally construed in favor of the insured. As a general rule, it is the court's duty to ascertain the meaning which the insured would reasonably expect from the language of the contract. If the language is clear and unequivocal, the court will enforce its terms and will not rewrite the contract. Further, an insured must be held to knowledge of the terms and conditions contained within the insurance policy, even though he may not have read them. *Usher v St Paul Fire & Marine Ins Co,* 126 Mich App 443, 447; 337 NW2d 351 (1983); *Herring v Golden State Mutual Life Ins Co,* 114 Mich App 148, 152; 318 NW2d 641 (1982); *Foremost Life Ins Co v Waters,* 88 Mich App 599, 604; 278 NW2d 688 (1979); see also *Zurich Ins Co v Rombough,* 384 Mich 228, 232-233; 180 NW2d 775 (1970).

While the rules covering both the insurer's duty to defend and the interpretation of insurance contracts require favoring the insured, it is our opinion that the express language of the insurance contract requires us to uphold the decision of the trial court. In the federal court action, Morris alleged his damages as follows:

"14. As a direct and proximate result of defendant Hoag's misconduct under color of state law plaintiff was denied his rights, privileges and immunities secured by the constitution, which denial of rights resulted in incarceration for four years, humiliation, public ridicule, loss of reputation, mental anguish and suffering, and expenditure of attorney fees and bail bond premium."

Both below and on appeal, Morris made much of

the definition of "personal injury" and its application to the present case. However, we are asked to construe a policy which uses the term "bodily injury", which is apparently undefined by the insurance contract. We find authority from other jurisdictions instructive on the definition of "bodily injury".

In *Rolette County v Western Casualty & Surety Co,* 452 F Supp 125 (D ND, 1978), the court considered a case factually similar to the instant case. The plaintiff county sought attorney's fees and expenses incurred in defending a civil action brought against its sheriff by the Guzmans. The Guzmans had sought damages because the sheriff had wrongfully seized their mobile home and automobile pursuant to a warrant of attachment obtained in a state court. The Guzmans alleged constitutional violations which resulted in their being embarrassed and humiliated, as well as being subjected to great mental anguish and emotional distress. That court noted that a condition precedent to finding the insurer had a duty to defend was the need for an allegation in the complaint of damages caused by an "occurrence". An occurrence was defined by the policy as being accidental in nature. Since the acts complained of were clearly intentional, there was no coverage pursuant to the policy. 452 F Supp 129-130.

The court then went on to note that the policy would provide no coverage for the claim in question regardless of the existence of an occurrence because the type of damages alleged did not constitute "bodily injury". 452 F Supp 130. The court concluded that the use of the term "bodily injury" in the policy limited the harm covered by the policy to "physical injury, sickness or disease" and did not include nonphysical harm to the person.

452 F Supp 130, citing *United States Fidelity & Guaranty Co v Shirgley,* 26 F Supp 625, 628 (WD Ark, 1939). The court then cited extensive case law to support the proposition that mental suffering has been consistently distinguished from physical harm in tort actions. 452 F Supp 130 and cases cited therein.

While the *Rolette* Court couched its reasoning in terms of defining occurrence, it concluded its opinion by finding:

> "Although the Guzmans' allegations constitute claims for 'injury to the person,' no 'bodily injury' was alleged in the complaint. Therefore, the court concludes Western had no duty to defend on the basis of the policy provisions for bodily injury coverage.
> "Since Western had no duty to defend the action against LeRoy Ouelette, it is unnecessary for the court to reach the other issues in the case." 452 F Supp 130.

As a general rule, other jurisdictions have found the term "bodily injury" to be unambiguous and understood to mean hurt or harm to the human body, contemplating actual physical harm or damage to a human body. See, *e.g., Cotton States Mutual Ins Co v Crosby,* 244 Ga 456; 260 SE2d 860 (1979); *Nickens v McGehee,* 184 So 2d 271, 278 (La App, 1966).[1]

---

[1] We do note that the Louisiana courts have shifted their position somewhat from the definition given in the *Nickens* case. In *Lees v Smith,* 363 So 2d 974 (La App, 1978), the court found that the term "bodily injury", which was defined by the insurance policy as including injury, sickness or disease, did not so unambiguously exclude coverage for alleged "humiliation" and "extreme and keen mental anguish and pain" so as to abrogate the insurer's duty to defend. 363 So 2d 980-981. This case drew support from a previous decision of that court which found that it was "unable to separate a person's nerves and tensions from his body". *Levy v Duclaux,* 324 So 2d 1, 10 (La App, 1975). For this reason, the *Levy* Court concluded that the plaintiff's humiliation, mental anguish, pain, and suffering were within the purview of coverage against bodily injury. We do not believe that such an expansive interpretation of the term "bodily injury" is warranted.

Even though the duty to defend is generally broader than normal policy coverage, we are of the opinion that there was no duty to defend here. As in *Rolette, supra,* we believe that the term "bodily injury" is not ambiguous and does not include humiliation and mental anguish and suffering as alleged in plaintiff's complaint in federal court. When policy language is clear and unequivocal, given its ordinarily understood meaning, its terms must be enforced. The courts should not rewrite the contract. See *Usher v St Paul Fire Ins, supra.* As a minimum, we would require alleged physical manifestation of Morris's mental suffering to require Royal Globe to defend Hoag in federal court.

Affirmed.