958 P.2d 990 (1998)
135 Wash.2d 777
Paul DALEY, Respondent,
v.
ALLSTATE INSURANCE COMPANY, a foreign insurance company, Petitioner.
No. 65644-4.
Supreme Court of Washington, En Banc.
Argued May 12, 1998.
Decided July 16, 1998.
*991 Harbaugh & Bloom, Gary N. Bloom, Debra Stephens, Bryan Harnetiaux, Spokane, amicus curiae on behalf of Washington State Trial Lawyers Association.
Reed, McClure, Michael Rogers, William Hickman, Seattle, for Petitioner.
Hames, Anderson & Whitlow, William Hames, Kennewick, for Respondent.
MADSEN, Justice.
Allstate Insurance Company (Allstate) petitioned for review of a Court of Appeals opinion reversing summary judgment in its favor. Allstate contends the Court of Appeals incorrectly held that an underinsured motorist (UIM) policy providing "damages for bodily injury" covers emotional or psychological damages unrelated to the insured's physical injuries. We agree and, accordingly, reinstate the decision of the trial court.

STATEMENT OF THE CASE
On January 17, 1990, Paul Daley was on duty as a Benton County sheriff's deputy when he stopped his vehicle to assist a man whose motorcycle had stopped running. State Patrol Trooper Raymond Hawn also stopped to assist Daley. As the two officers were talking with the motorcyclist, a car driven by Jan Spencer struck both Daley and Hawn.
Trooper Hawn suffered head and internal injuries and later died. Daley suffered bruises and swelling to his leg and bruises and lacerations to his arm. Daley was also diagnosed with depression and late onset posttraumatic stress disorder which surfaced approximately a year after the accident when a good friend and co-worker died in an automobile accident. His depression and late onset posttraumatic stress disorder were attributed, in large part, if not entirely, to the trauma of the accident and witnessing the death of Trooper Hawn.
Daley received a $25,000 settlement from Spencer's insurance company, which covered damages related to his physical injuries, and then sought benefits under the UIM provision in his Allstate insurance policy for damages related to his emotional distress. Washington's UIM statute requires that issuers of automobile insurance policies offer UIM coverage
for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom.... *992 RCW 48.22.030(2) (emphasis added). Pursuant to the statute, Allstate's policy provides the following UIM coverage:
We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured motor vehicle. Bodily injury means bodily injury, sickness, disease or death. Property damages means injury to or destruction of property.
Clerk's Papers (CP) at 118 (emphasis added). Based on its policy language which allows recovery only for "bodily injury," Allstate denied coverage for Daley's emotional distress, and Daley filed this action.
Allstate moved for summary judgment arguing the term "damages for bodily injury" does not include emotional or psychological damages unrelated to an insured's physical injuries. The superior court agreed and dismissed Daley's action. The Court of Appeals, however, reversed finding that Daley could recover damages for his emotional injuries. See Daley v. Allstate Ins. Co., 86 Wash.App. 346, 936 P.2d 1185 (1997). The court reasoned that emotional or psychological injuries suffered as a direct result of an incident that also caused physical injury to the insured are "bodily injury" for purposes of the insurance contract and the UIM statute regardless of whether the emotional injury is directly related the physical trauma. Id. at 355, 936 P.2d 1185.
Allstate petitioned for review which this court granted.

DISCUSSION
Allstate seeks review of the Court of Appeals decision reversing summary judgment in its favor. An appellate court reviews a trial court's decision to grant summary judgment de novo. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper only when the evidence presented shows there is no issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilson, 98 Wash.2d at 437, 656 P.2d 1030. All facts and reasonable inferences are resolved in favor of the nonmoving party and summary judgment is granted only if reasonable minds could reach but one conclusion from the evidence. Id.
The Washington Legislature mandates UIM coverage for insured persons who are legally entitled to recover damages from owners of underinsured motor vehicles for "damages ... because of bodily injury, death, or property damage...." RCW 48.22.030(2). The Allstate policy issued to Daley provides for the required coverage allowing recovery for "damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle." CP at 118.
At issue is whether emotional distress damages unrelated to an insured's physical injury are recoverable. Allstate concedes that an insured "can recover UIM benefits for his emotional distress ... if the emotional distress ... existed `because of bodily injury' sustained by the insured, resulting from the accident." Pet. for Review of Allstate Ins. Co. at 5; see also Supplemental Br. of Pet'r at 8 ("[t]he UIM statute does not require coverage for emotional distress not caused by bodily injury to the insured."). This is consistent with cases in Washington and elsewhere recognizing that "damages for bodily injury" include damages for emotional distress which arise as a result of a physical injury. See Thompson v. Grange Ins. Ass'n, 34 Wash.App. 151, 161, 660 P.2d 307 (1983) (damages for loss of consortium are allowed where a spouse suffers bodily injury and can no longer perform the spousal functions); Michael Sean Quinn & L. Kimberly Steele, Insurance Coverage Opinions, 36 S. Tex. L.Rev. 479, 527 (1995) (mental anguish as a consequence of bodily injury is covered).
In this case, the record reflects that Daley's emotional distress did not occur as a result of his physical injuries, which were relatively minor. Daley's depression and late onset posttraumatic stress disorder surfaced over a year after the accident, well after his physical injuries had healed. His emotional injuries appear to be largely, if not entirely, *993 due to the guilt and emotional trauma related to witnessing Trooper Hawn's fatal injuries in addition to the emotional trauma of the accident itself. Evidence in the record indicates that other problems, also unrelated to his physical injuries, may have contributed to his condition.[1] On appeal, Daley contends that some emotional distress was a result of his physical injuries suffered in this case. However, Daley points to no portion of the record indicating that his posttraumatic stress disorder and depression are directly related to his physical injuries.[2] Accordingly, this case can be decided as a matter of law based on whether the term "damages for bodily injury" includes damages for emotional distress unrelated to an insured's physical injury.[3]
Interpretation of an insurance contract is a question of law. Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wash.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1995). Courts interpret insurance contracts as an average insurance purchaser would understand them and give undefined terms in these contracts their "`plain, ordinary, and popular'" meaning. Kish v. Insurance Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994) (quoting Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 881, 784 P.2d 507, 87 A.L.R.4th 405 (1990)). If a policy provision is ambiguous, the interpretation most favorable to the insured applies. Id. An ambiguity exists only `"if the language on its face is fairly susceptible to two different but reasonable interpretations."' Id. at 171, 883 P.2d 308 (quoting Washington Pub. Util. Dists'. Utils. Sys. v. PUD No. 1, 112 Wash.2d 1, 11, 771 P.2d 701 (1989)).
Daley asserts that he should be able to recover under his UIM policy to the extent that he has an action in tort against the underinsured driver in this case. Daley argues that since he would have a cause of action in tort against the driver of the underinsured vehicle for negligent infliction of emotional distress[4] that he should be able to recover under his Allstate UIM policy for emotional distress related to the driver's negligent conduct regardless of whether the emotional distress is directly related to a physical injury.
Daley, however, can recover for such emotional injuries only if they constitute "bodily injury" pursuant to the terms of the policy. "Bodily injury" is defined in the Allstate UIM policy as "bodily injury, sickness, disease or death." CP at 118. The clear majority of states,[5] including Washington, have *994 held that the term "bodily injury" does not include damages for purely emotional injuries. See E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 726 P.2d 439 (1986); Allstate Ins. Co. v. Hammonds, 72 Wash.App. 664, 865 P.2d 560 (1994); Northwest Farm Bureau Ins. Co. v. Roberts, 52 Wash.App. 888, 765 P.2d 328 (1988).
Courts generally hold that "in the context of purely emotional injuries, without physical manifestations, the phrase `bodily injury' is not ambiguous. Its ordinary meaning connotes a physical problem." SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 205, 607 A.2d 1266 (1992); accord Allstate Ins. Co. v. Diamant, 401 Mass. 654, 658, 518 N.E.2d 1154 (1988); Farm Bureau Mut. Ins. Co. v. Hoag, 136 Mich.App. 326, 333-34, 356 N.W.2d 630 (1984). Courts simply interpret the word "bodily" in the term bodily injury to mean physical injury to the body. See Chatton v. National Union Fire Ins. Co., 10 Cal.App.4th 846, 854, 13 Cal.Rptr.2d 318 (1992); Aim Ins. Co. v. Culcasi, 229 Cal. App.3d 209, 220, 280 Cal.Rptr. 766 (1991). In addition, dictionary definitions equate the term bodily with physical or corporeal, as opposed to mental or spiritual.[6]See Aim Ins. Co., 229 Cal.App.3d at 219, 280 Cal.Rptr. 766. Relying upon the well-established principle of applying the ordinary meaning of the term "bodily," courts have emphasized that they will not strain the words in order to force an ambiguous meaning. Id.; Chatton, 10 Cal.App.4th at 854, 13 Cal.Rptr.2d 318; Hoag, 136 Mich.App. at 333-34, 356 N.W.2d 630. Therefore, the overwhelmingly majority of courts interpret the phrase "bodily injury" to include claims for physical injury and to exclude claims for purely nonphysical or emotional harm.[7] As one court states, "`[b]odily injury' ... is a narrow term and encompasses only physical injuries to the body and the consequences thereof." Diamant, 401 Mass. at 656, 518 N.E.2d 1154.
Washington follows the majority of jurisdictions which find that the term "bodily injury" does not encompass recovery for purely emotional injuries. In E-Z Loader, this court considered whether an insured could recover for sex and age discrimination pursuant to a claim for wrongful discharge under her employer's comprehensive general liability policy which allowed recovery for "bodily injury." E-Z Loader, 106 Wash.2d at 903-06, 726 P.2d 439. The term "bodily injury" was defined in the general liability policy, similar to the present case, as "bodily injury, sickness or disease...." Id. at 904, 726 P.2d 439. The court concluded that the employee coverage contemplated actual bodily injury, sickness or disease resulting in physical impairment, as contrasted to mental impairment. Id. at 908, 726 P.2d 439. The court reasoned that the terms "sickness" and "disease" were modified by the word "bodily" and therefore, "[m]ental anguish and illness, and emotional distress are not covered by the express terms of the ... policy." Id. The court declined to stretch the policy to the point to where it would cover such problems. Id.
*995 When interpreting the typical policy definition of bodily injury as "bodily injury, sickness, or disease," other courts have also found that the definition's use of the word "bodily" modifies the terms "sickness or disease." See e.g., Aetna Cas. & Sur. Co. v. First Sec. Bank, 662 F.Supp. 1126, 1128 (D.Mont.1987); Rolette County v. Western Cas. & Sur. Co., 452 F.Supp. 125, 129-30 (D.C.N.D.1978); Aim Ins. Co., 229 Cal. App.3d at 220 n. 4, 280 Cal.Rptr. 766; Cotton States Mut. Ins. Co. v. Crosby, 244 Ga. 456, 457-59, 260 S.E.2d 860 (1979). As such, Allstate's policy definition would then read "bodily injury, bodily sickness, bodily disease or bodily death." This interpretation, therefore, excludes the possibility that "sickness or disease" might encompass mental or emotional sickness or disease.
Division One of the Court of Appeals has followed E-Z Loader finding that, similar to the argument made in the present case, an insured's homeowners policy which allowed damages for "bodily injury" did not encompass an insured's claim for negligent infliction of emotional distress. Northwest Farm Bureau, 52 Wash.App. at 891, 765 P.2d 328. Like the policy at issue here, the homeowners policy in Northwest Farm Bureau defined "bodily injury" as "physical harm, sickness or disease...." Id. Thus, courts in Washington and elsewhere have found that coverage for "bodily injury" does not include claims for purely emotional distress and we find that the present case does not warrant a different result.
Daley attempts to distinguish the above cited Washington case law on the basis that the insurance policy involved in E-Z Loader was a commercial general liability policy and the policy involved in Northwest Farm Bureau was a homeowners policy. Since those cases did not involve a UIM policy, the insured argues they are not applicable. Daley argues that the Court of Appeals decision in Grange Ins. Ass'n v. Hubbard, 35 Wash.App. 407, 667 P.2d 121 (1983), should control in the present case. In Hubbard, Division Three of the Court of Appeals allowed a mother to recover for loss of consortium for the death of her uninsured minor son who was killed in an automobile accident. The court found that although the mother did not suffer any bodily injury she could nevertheless recover for her mental anguish and injury to the parent-child relationship pursuant to her UIM policy. Id. at 409-13, 667 P.2d 121.
Division Three's decision in Hubbard, however, was called into doubt by Division One in Gaddis v. Safeco Ins. Co. of Am., 58 Wash.App. 537, 542, 794 P.2d 533 (1990) and was rejected by Division Two in Allstate Ins. Co. v. Hammonds, 72 Wash.App. 664, 673 n. 4, 865 P.2d 560 (1994). In Gaddis and Hammonds, Division One and Two of the Court of Appeals found that an insured could not recover for loss of consortium pursuant to a UIM policy where the insured suffered no physical injuries and was instead based on injuries to a person not covered by the policy. Hammonds, 72 Wash.App. 664, 865 P.2d 560; Gaddis, 58 Wash.App. 537, 794 P.2d 533. Consequently, both courts rejected the insureds' claims for loss of consortium based on physical injury to another person who was uninsured. "[A] reasonable person reading the policy clause would understand it to promise UIM benefits only when an insured sustains direct injuries." Hammonds, 72 Wash.App. at 668, 865 P.2d 560. Similar to Hammonds and Gaddis, Daley's emotional distress does not arise from his own physical injuries but are instead based on injuries to an uninsured third person.
The fact that the decisions in E-Z Loader and Northwest Farm Bureau did not involve UIM policies does not undermine their precedential value in this case. The policies in those cases define "bodily injury" as it is defined here as "bodily injury, sickness or disease." We held in E-Z Loader that the word "bodily" modifies the terms "injury," "sickness" or "disease." The statutory construction of the terms involved in the present case does not change because a UIM policy is involved.
The Court of Appeals in the present case distinguished E-Z Loader and Northwest Farm Bureau stating that "[n]either case involved emotional damages arising directly from the plaintiffs' physical injury," therefore, the court found that "neither case applie[d]." Daley, 86 Wash.App. at 355, 936 P.2d 1185. This distinction fails, however, *996 because it is clear from the record that Daley's emotional distress was not related to his physical injury.
Daley next argues that excluding damages for emotional injury is contrary to public policy. Daley notes that Washington courts have held that the UIM statute is to be "`liberally construed in order to provide broad protection against financially irresponsible motorists'" and that the purpose of the statute "`is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance.'" Britton v. Safeco Ins. Co. of Am., 104 Wash.2d 518, 522, 707 P.2d 125 (1985) (quoting Touchette v. Northwestern Mut. Ins. Co., 80 Wash.2d 327, 494 P.2d 479 (1972)). "`The insurance carrier which issued the policy stands, therefore, in the shoes of the uninsured motorist to the extent of the carrier's policy limits.'" Id. (quoting State Farm Mut. Auto. Ins. Co. v. Bafus, 77 Wash.2d 720, 724, 466 P.2d 159 (1970)). The Plaintiff essentially argues that the purpose and public policy of the UIM statute is to place the UIM carrier in the shoes of the tort-feasor.
Allstate, however, is not required to pay all damages incurred by the plaintiff as the result of an act of a tort-feasor, as the literal language of the UIM statute and the policy limit Allstate's obligation to pay for only those damages for "bodily injury" or "property damage." This court has recognized the public policy behind the statute, but it has also emphasized the rights of the parties to enter into binding contracts. Thus, this court has stated that "[n]otwithstanding its tort-oriented appearance, uninsured and underinsured motorist coverages are most appropriately characterized as 2-party contractual relationships between the insurer and the insured." Britton, 104 Wash.2d at 529, 707 P.2d 125.
Contrary to arguments by Daley, courts have held that similar limitations on UIM coverage do not violate public policy. In Hammonds, the parent of an injured uninsured child made a UIM claim for loss of consortium for his child's injuries which were caused by an uninsured tort-feasor. While, under the law, that parent would have the right to bring a claim against the tort-feasor, the court did not allow damages pursuant to the UIM policy because they were not covered under the policy.
The court addressed the public policy issues involved in limited coverage under UIM policies, discussing the contrast between public policy requirements of UIM coverage versus the right to contract. The court in Hammonds recognized the well-accepted public policy of the UIM statute to provide a floating layer of coverage for the insured but also emphasized that
Despite this public policy of broad protection for injured persons, Washington courts have avoided undue interference with the right to contract. "We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful." [State Farm Gen. Ins. Co. v.] Emerson, 102 Wash.2d at [477, 483, 687 P.2d 1139 (1984) ]. Thus, public policy arguments are generally successful only if supported by specific legislation or judicial decisions.... we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." 17 C.J.S. Contracts § 211, at 1024 (1963).
. . .
Public policy, as a rule, is recognized by the courts of this state when the Legislature has acted, and not before.... Sayan v. United Servs. Auto. Ass'n, 43 Wash. App. 148, 159, 716 P.2d 895, review denied, 106 Wash.2d 1009 (1986).
Hammonds, 72 Wash.App. at 671-72, 865 P.2d 560. The court in Hammonds explained that the Legislature allows UIM coverage to be limited to damages suffered as a result of "bodily injury." Id. at 672, 865 P.2d 560. The court concluded that neither the language of RCW 48.22.030 nor court decisions prohibited the coverage limitation contained in the Allstate policy, which, consistent with the UIM statute, allowed coverage only for "bodily injury," thus, excluding *997 damages for emotional injuries. Hammonds at 672-73, 865 P.2d 560.
The Washington Legislature and the case law allow UIM coverage to be limited to damages for "bodily injury." RCW 48.22.030. The term "bodily injury" is not ambiguous and does not include recovery for emotional distress. The Allstate policy in this case would violate public policy with regard to UIM coverage, only if the exclusions or restrictions on coverage provide for coverage less than that mandated by the Legislature. See Britton, 104 Wash.2d at 531, 707 P.2d 125 ("where the underinsured motorist endorsement does not provide protection to the extent mandated by the underinsured motorist statute, the offending portion of the policy is void and unenforceable."). The Legislature requires that UIM policies provide coverage for "bodily injury" and the Allstate policy in this case mirrors the statute. Therefore, limiting Daley's recovery to the terms of his policy does not violate public policy.
The Washington State Trial Lawyers Association (WSTLA) also filed a brief before this court. WSTLA argues that to the extent the UIM statute requires the insured to be legally entitled to recover "because of bodily injury, death, or property damage," such a requirement does not mandate that the bodily injury, death, or property damage be suffered by the insured seeking benefits. Br. of Amicus Curiae at 4. As long as the insured has a cause of action in tort against the underinsured motorist he or she would be able to receive damages as long as some person suffered bodily injury. Thus, WSTLA contends that Daley should be able to recover under his UIM policy for emotional distress damages based on Trooper Hawn's fatal injuries.
For its contention, WSTLA relies on an Ohio Supreme Court opinion, Sexton v. State Farm Mut. Auto. Ins. Co., 69 Ohio St.2d 431, 433 N.E.2d 555 (1982), where the court allowed an insured father to recover for pecuniary damages related to his daughter's death. His daughter was not covered under his insurance policy because she did not live with her father. The court explained that the UIM statute did not specifically indicate who must suffer "bodily injury." Construing the statute liberally, the court allowed the father to recover for his pecuniary loss. Sexton, 69 Ohio St.2d at 432, 433 N.E.2d 555; see also Hinners v. Pekin Ins. Co., 431 N.W.2d 345 (Iowa 1988) (court allowed an insured to recover for loss of consortium for injuries sustained by her uninsured husband). Subsequent to the court's ruling in Sexton, the Ohio Legislature amended the UIM statute to specifically overrule Sexton and permit a policy exclusion limiting coverage only to bodily injury suffered by the insured. See Simone v. Western Reserve Mut. Cas. Co., 1996 WL 191768 (Ohio Ct.App. Apr. 18, 1996).
Despite WSTLA's arguments, Washington courts have explicitly rejected the decision in Sexton and have followed the majority of courts which do not allow an insured to recover damages based on injuries to or death of an uninsured person. See Gaddis, 58 Wash.App. 537, 794 P.2d 533 (upholding denial of insured children's UIM claim for loss of consortium for death of mother under father's policy as not covered by the policy, on ground that the death of an uninsured person does not give rise to coverage under the policy language or UIM statute); Hammonds, 72 Wash.App. 664, 865 P.2d 560 (rejecting insured father's UIM claim for loss of consortium of his uninsured son).
The Court of Appeals in Gaddis, stated "[w]e do not perceive that such broad coverage of losses arising from death or injury to noninsured persons was expected or intended by the average reasonable purchaser of insurance." Gaddis, 58 Wash.App. at 544, 794 P.2d 533. The court found that such a result was not contrary to the policy contained in the UIM statute. Id.
Based on similar policy and statutory language, the California Court of Appeals held that a child could not recover for loss of consortium for the wrongful death of her parent who was not insured under the daughter's policy. Smith v. Royal Ins. Co. of Am., 186 Cal.App.3d 239, 230 Cal.Rptr. 495 (1986). The court emphasized that
[e]ven a liberal construction of the statute... does not mandate recovery on these facts, as respondent [insurance company] *998 neither intended nor was required to provide coverage for wrongful death when neither the decedent nor the car in which he was riding was insured by respondent.
Smith, 186 Cal.App.3d at 243, 230 Cal.Rptr. 495. Other courts have reached the same conclusion based on similar policy language and statutes. See Spurlock v. Prudential Ins. Co., 448 So.2d 218 (La.Ct.App.1984); Lafleur v. Fidelity & Cas. Co., 385 So.2d 1241 (La.Ct.App.1980); Bakken v. State Farm Mut. Auto. Ins. Co., 139 Ariz. 296, 678 P.2d 481 (Ct.App.1983); Farmers Ins. Exch. v. Chacon, 939 P.2d 517 (Colo.Ct.App.1997); Delancey v. State Farm Mut. Auto. Ins. Co., 918 F.2d 491 (5th Cir.1990); State Farm Mut. Ins. Co. v. Wainscott, 439 F.Supp. 840 (D.Alaska 1977); Bartning v. State Farm Fire & Cas., 164 Ariz. 370, 793 P.2d 127 (Ct.App.1990); Valiant Ins. Co. v. Webster, 567 So.2d 408 (Fla.1990); Gillespie v. Southern Farm Bureau Cas. Ins. Co., 343 So.2d 467 (Miss.1977); Livingston v. Omaha Property & Cas. Ins. Co., 927 S.W.2d 444 (Mo.Ct. App.1996).
If UIM coverage were extended to a claimant for a person who is not an insured under the claimant's policy, such coverage would unduly enlarge and create coverage where none existed under either the terms of the insurance policy or the UIM statute. No reasonable purchaser of insurance would believe that their policy encompassed bodily injuries to other uninsured individuals. A reading of the policy language in this case and the UIM statute does not provide for the result argued by WSTLA, is contrary to Washington case law and would lead to an unfair result where insured persons would be entitled to damages which were not factored into the cost of the policy premium.

CONCLUSION
Daley is entitled to recover damages only for "bodily injury" under the terms of his Allstate UIM policy. The term "bodily injury" is unambiguous and does not include recovery for emotional distress unrelated to a physical injury. This limitation on recovery does not violate public policy as Allstate's policy directly mirrors the coverage mandated pursuant to Washington's UIM statute. Thus, we find that Daley's emotional injuries are not recoverable. We reverse the decision of the Court of Appeals, including the court's decision awarding Daley attorney's fees, and reinstate the decision of the trial court.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, ALEXANDER and SANDERS, JJ., concur.
JOHNSON, Justice (dissenting).
I agree with Allstate and with the majority that any emotional injuries suffered by Deputy Daley as a result of his physical injuries from the accident would be compensable under his underinsured motorist (UIM) coverage. Majority at 992. I disagree, however, with the majority's statement that "the record reflects that Daley's emotional distress did not occur as a result of his physical injuries," majority at 992, and the majority's overall holding that emotional injuries arising from the accident in general are somehow unworthy of compensation. Neither the UIM provision in Deputy Daley's insurance contract nor the statute requiring UIM coverage makes this distinction. I dissent.
The flaw fatal to the majority's analysis is its concession that any emotional distress suffered by Deputy Daley as a result of his physical injuries would be covered. Majority at 992 (citing Thompson v. Grange Ins. Ass'n, 34 Wash.App. 151, 161, 660 P.2d 307 (1983)). With one hand, the majority states that Deputy Daley's emotional distress is not covered because the UIM provision speaks only to bodily injury. With the other hand, the majority states that even though the UIM provision speaks only to "bodily injury," any emotional damages suffered by Deputy Daley as a result of his physical injuries would be covered. Where in Allstate's UIM coverage provision is this distinction made? Nowhere. Instead, the majority creates an artificial nicety to deny recovery to Deputy Daley because his emotional distress is not, in the majority's opinion, connected enough to his physical injuries.
In reversing the trial court's grant of summary judgment for Allstate, the Court of Appeals stated:

*999 [b]ecause his [Daley's] emotional injuries flow directly from the same act that caused his physical injuries, there is no apparent reason to deny recovery for the emotional injuries.
... The law permits recovery by "plaintiffs who are actually placed in peril by the defendant's negligent conduct and [by] family members present at the time who fear for the one imperiled."
Daley v. Allstate Ins. Co., 86 Wash.App. 346, 351-52, 936 P.2d 1185 (1997) (quoting Cunningham v. Lockard, 48 Wash.App. 38, 45, 736 P.2d 305 (1987)).
I agree. The artificial distinction created by the majority attempts to segregate the total emotional damages which are the result of one accident into two separate spheres; those which arise out of the insured's physical injuries and those that do not. According to the majority, those emotional damages which are not directly caused by the insured's own physical injuries are not worthy of compensation. Such segregation is similar to splitting hairs requiring, as the Court of Appeals noted, "a factual determination, which itself would call upon the wisdom of Solomon to precisely identify the source of Mr. Daley's psychological injuries." Daley, 86 Wash.App. at 354, 936 P.2d 1185.
The Legislature requires that all motor vehicle insurance policies contain underinsured motorist clauses. RCW 48.22.030(2). Why does the Legislature require this? To "allow `an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.'" Brown v. Snohomish County Physicians Corp., 120 Wash.2d 747, 756-57, 845 P.2d 334 (1993) (quoting Blackburn v. Safeco Ins. Co., 115 Wash.2d 82, 87, 794 P.2d 1259 (1990)).[1]See also Hamilton v. Farmers Ins. Co., 107 Wash.2d 721, 728, 733 P.2d 213 (1987) ("the purpose and intent of this statutory scheme prohibits policy provisions which attempt to limit the insured's right to full compensation.").
There is no doubt that, had the tortfeasor in this case possessed liability coverage to the extent of Deputy Daley's UIM coverage, Daley would have been compensated for the emotional distress he suffered as a result of the accident regardless of whether his emotional distress arose from his own physical injuries or some other aspect of the accident. See Hunsley v. Giard, 87 Wash.2d 424, 435-36, 553 P.2d 1096 (1976). With that in mind, requiring Allstate to provide coverage for those same injuries under the UIM coverage provision in its contract would comport with the legislative purpose underlying the mandate of RCW 48.22.030(2).
The majority goes on, however, and holds that Allstate is required only to cover damages resulting from "bodily injury" which do not include emotional injuries (at least emotional injuries that are not a direct consequence of an insured's physical injuries). Majority at 993-994. The majority further holds that the emotional injuries Deputy Daley seeks compensation for are unrelated to his physical injuries. Majority at 992, 996. In my opinion, that conclusion is not borne out by the record.
The record provided to us does not contain, as the majority holds, a clear line of demarcation which evidences that "Daley's emotional distress did not occur as a result of his physical injuries" or that "Daley's emotional distress was not related to his physical injury." Majority at 992, 996. As such, we cannot truly discern this artificial distinction created by the majority and should affirm the Court of Appeals.
A review of some of the facts is helpful in discovering why Deputy Daley's emotional distress is not wholly separate from his physical injuries. While Deputy Daley and Trooper Hawn were assisting a stranded motorcyclist, a 1975 Ford Maverick struck them both. Deputy Daley's first awareness of being hit by the vehicle was when he was "struck and propelled airborne into a ditch." Clerk's Papers at 39. Deputy Daley lay *1000 unconscious in the ditch for a short period of time. When he finally awoke, he realized his right leg was injured and he had significant bruising and lacerations on his left arm.[2] As he awoke, he noticed Trooper Hawn's body lying in the middle of the roadway. Not knowing whether Trooper Hawn was alive or dead, Deputy Daley struggled to his patrol car and was able to move it into the middle of the roadway to act as a barrier for Hawn's body.
Deputy Daley then attempted unsuccessfully to make radio contact, eventually reaching another officer on a different frequency. He then discovered Trooper Hawn was not breathing and, disregarding his own injuries, began administering CPR to Hawn, who eventually resumed breathing. When help arrived, Deputy Daley and Trooper Hawn were both transported to the same hospital in the same ambulance for examination. About an hour and a half later, Trooper Hawn died in the emergency room. That is where Deputy Daley learned of Hawn's death.
Deputy Daley does not claim his emotional injuries stem only from witnessing Trooper Hawn's death. That is a claim made by Allstate. In fact, it was Allstate which limited the issue on summary judgment before the court by stating, "it will be assumed that all of plaintiff's psychological problems and post-traumatic stress disorder are due solely to the mental anguish suffered as a result of the accident of January 17, 1990." Clerk's Papers at 85 (emphasis added). It made no mention of the physical injuries suffered by Deputy Daley.
Regardless, the record is replete with reports from many mental health professionals indicating that the two types of injuries cannot be separated. Dr. Douglas Robinson diagnosed Deputy Daley's posttraumatic stress disorder as "industrially related." Dr. Bruce Duthie states, "[i]t is impossible to treat this disorder in a vacuum." Clerk's Papers at 47-48. A report from Dr. Joel Seres states, "The patient indicates he has had some difficulty with psychological dysfunction as a result of the injury on January 17, 1990...." Clerk's Papers at 70 (emphasis added). Dr. Richard Newman provides the most telling analysis:
Based on an initial reading of the above records it is my impression that Mr. Paul Daley sustained a Post Traumatic Stress Disorder as a direct result of the accident that took the life of Trooper Hahn on 1/17/90.... Mr. Daley's PTSD may have initially [been] presented as "physical symptoms" and basically gone undiagnosedhence "delayed onset."
Clerk's Papers at 55. Dr. Newman also indicates some of Deputy Daley's emotional injuries including the fact he reported he has nightmares which include visions of the deceased Trooper Hawn burying Daley in a grave and that Daley, in these nightmares, will often feel himself flying through the air after being struck by a vehicle. Yet, the majority attempts to segregate these emotional injuries from those associated with Deputy Daley's physical injuries. How so? Are not all of Deputy Daley's emotional injuries a direct result of the fact he was injured in this accident? As the Court of Appeals succinctly held in this case: "Mr. Daley was physically injured, and his emotional injuries flowed directly from the conduct that caused his physical injuries." Daley, 86 Wash.App. at 354, 936 P.2d 1185.
The majority finds support in the fact that other stressors in Deputy Daley's life may have something to do with his emotional injuries. Majority at 993, n. 1. The record, however, indicates otherwise. Dr. Newman also stated:
There are also a number of references to possible contributions from other stressors in Deputy Daley's life.... In general accumulated "stresses" in everyday living such as those listed as additional stressors do not culminate in a diagnosis of Post Traumatic Stress Disorder.... Accumulative stress falls under the general heading of Cumulative Injury or Trauma while Post Traumatic Stress Disorder revolves typically around one major incident that *1001 produces an overall "shock effect" in the organism....
Clerk's Papers at 56.
In short, I can discern no reason presented by the majority why an insured's emotional injuries resulting from his or her physical injuries are compensable, while emotional injuries that do not result from physical injuries are not. This distinction finds no basis in either the policy language of the UIM coverage proviso or the Legislature's requirement of UIM coverage. Even so, the majority's attempt to segregate Deputy Daley's emotional damages is unsupported by the record. If anything, the record is ambiguous on the issue of the source of Deputy Daley's damages. Viewing the facts in the record in a light most favorable to Deputy Daley, remand is required. I would affirm the Court of Appeals.
TALMADGE, J., concurs.
NOTES
[1] Psychiatric reports indicate that some of Daley's emotional distress may be related to other, highly personal matters.
[2] Additionally, on summary judgment Daley did not argue that any of his emotional distress was a direct result of his physical injuries suffered in this case. Thus, in addition to the fact that the record does not support Daley's assertion, he also raises this argument for the first time on appeal.
[3] We note that this is not a case where the parties have argued that the emotional distress has manifested physical symptoms, arguably, becoming a "bodily injury" under the terms of the policy. Daley does not allege that his posttraumatic distress disorder and related depression resulted in physical symptoms.
[4] Daley's argument rests on the assumption that he would have a cause of action against the driver for negligent infliction of emotional distress. We do not address the merits of Daley's claim against the driver for negligent infliction of emotional distress because the case can be resolved pursuant to the terms of his underinsured motorist (UIM) policy.
[5] See e.g., Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc., 493 F.2d 257 (6th Cir.1974); E.E.O.C. v. Southern Publ'g Co., 705 F.Supp. 1213 (S.D.Miss.1988); Mutual Serv. Cas. Ins. Co. v. Co-op Supply, Inc., 699 F.Supp. 1438 (D.Mont. 1988); West Am. Ins. Co. v. Bank of Isle of Wight, 673 F.Supp. 760 (E.D.Va.1987); Aetna Cas. & Sur. Co. v. First Sec. Bank, 662 F.Supp. 1126 (D.Mont.1987); St. Paul Fire & Marine Ins. Co. v. Campbell County Sch. Dist. No. 1, 612 F.Supp. 285 (D.Wyo.1985); Rolette County v. Western Cas. & Sur. Co., 452 F.Supp. 125 (D.C.N.D.1978); Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254 (Minn.1993); Chatton v. National Union Fire Ins. Co., 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318 (1992); National Cas. Co. v. Great Southwest Fire Ins. Co., 833 P.2d 741 (Colo.1992); University of Ill. v. Continental Cas. Co., 234 Ill.App.3d 340, 599 N.E.2d 1338, 175 Ill.Dec. 324 (1992); Aim Ins. Co. v. Culcasi, 229 Cal.App.3d 209, 280 Cal.Rptr. 766 (1991); Dahlke v. State Farm Mut. Auto. Ins. Co., 451 N.W.2d 813 (Iowa 1990); Mellow v. Medical Malpractice Joint Underwriting Ass'n, 567 A.2d 367 (R.I.1989); Allstate Ins. Co. v. Diamant, 401 Mass. 654, 518 N.E.2d 1154 (1988); Greenman v. Michigan Mut. Ins. Co., 173 Mich.App. 88, 433 N.W.2d 346 (1988); Daley v. United Servs. Auto. Ass'n, 312 Md. 550, 541 A.2d 632 (1988); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315, 736 P.2d 798 (Ct.App.1986); Farm Bureau Mut. Ins. Co. v. Hoag, 136 Mich.App. 326, 356 N.W.2d 630 (1984); New Hampshire Ins. Co. v. Bisson, 122 N.H. 747, 449 A.2d 1226 (1982); Cotton States Mut. Ins. Co. v. Crosby, 244 Ga. 456, 260 S.E.2d 860 (1979).
[6] Webster's Third New International Dictionary defines "bodily" as "having a body or a material form: PHYSICAL, CORPOREAL." It considers the word synonymous with physical, corporeal, corporal, and somatic, explaining, "these words agree in referring to the human body and differ so little that they are often interchangeable. BODILY contrasts with mental or spiritual." Webster's Third New International Dictionary, 245 (1993). The Random House Dictionary of the English Language defines "bodily" as "1. of or pertaining to the body. 2. corporeal or material, as contrasted with spiritual or mental[.]" Random House Dictionary of the English Language 232 (2d ed.1993). The American Heritage Dictionary defines "bodily" as "1. Of, pertaining to, within, or exhibited by the body: bodily organs. 2. Physical as opposed to mental or spiritual[.]" American Heritage Dictionary 193 (2d College ed.1982), quoted in Aim Ins. Co., 229 Cal. App.3d at 219, 280 Cal.Rptr. 766. Finally, Black's Law Dictionary defines "bodily" as "[p]ertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporeal." Black's Law Dictionary 175 (6th ed.1990); see also Ballentine's Law Dictionary 144 (3d ed.1969) (same).
[7] See footnote 5.
[1] As we noted in Blackburn, the policy reflected by the UIM statute is the protection of innocent victims of auto accidents by providing a source of indemnification when the tort-feasor does not provide adequate protection. Blackburn, 115 Wash.2d at 87, 794 P.2d 1259.
[2] The majority characterizes Deputy Daley's injuries as "relatively minor." Majority at 992. These injuries, however, required that he be taken by ambulance to the local hospital to be examined.