RENDERED: SEPTEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0522-DG

GEORGETOWN CHICKEN COOP, LLC;                                      APPELLANTS
ANTHONY CRISH; CHAD GIVENS;
COCK-A-DOODLE-DOO, LLC;
PRESTON RESTAURANT "A", LLC;
AND ROBERT GAUTHIER

V.                      ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0101
FAYETTE CIRCUIT COURT NO. 19-CI-01315

GRANGE INSURANCE COMPANY                                   APPELLEE

**OPINION OF THE COURT BY JUSTICE GOODWINE**

**<u>AFFIRMING</u>**

This matter comes before the Court for review of the Court of Appeals' opinion holding the Fayette Circuit Court erred in finding an ambiguity in the commercial umbrella policy. Based on our review, we affirm the Court of Appeals.

## I.    BACKGROUND

This is an insurance coverage action that arises out of dram shop claims against two parties insured by Grange Insurance Company ("Grange"). The underlying claims arose out of a motor vehicle accident that resulted in the deaths of five members of the Abbas family whose estates are the tort plaintiffs

in the underlying action and Joey Lee Bailey ("Bailey") who was the overserved driver.

On the evening of January 5, 2019, Bailey was a customer of the Appellants at their restaurant known as "Roosters" in Georgetown. At Roosters, Bailey was served food and alcohol. Bailey left Roosters and visited "Horseshoes," which is a restaurant, bar, and entertainment venue in Lexington. During the early morning hours of January 6, 2019, Bailey left Horseshoes and drove southbound in the northbound lanes of Interstate 75 in Fayette County and collided with a vehicle occupied by the Abbas family, killing Bailey and all five Abbas family occupants.

At the time of the accident, the Roosters Appellants were insured by Grange pursuant to a businessowners policy ("BOP") and a commercial umbrella policy ("CUP"). It is undisputed that the BOP provides for a $1,000,000 limit of liability for bodily injury and property damage arising out of the selling, serving, or furnishing of alcoholic beverages.

The first paragraph of the CUP states: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." The body of the policy contains Section I – Coverages, Subsection 2. Exclusions, with subsection c. Liquor Liability. This provision generally excludes liquor liability, but it makes an exception for liability arising from the business of the insured of serving alcohol. The language then indicates the umbrella coverage will follow the primary policy,

2

"unless otherwise directed by this insurance." Endorsement CU 47 at the end of the policy states that it replaces the liquor liability exclusion.

On April 9, 2019, the personal representative of the Abbas family filed suit against Georgetown Chicken Coop, LLC, (GCC) and other defendants. On January 5, 2021, the Abbas family filed its fourth amended complaint adding Preston "A" Restaurant, LLC; Cock-A-Doodle Doo, LLC; Robert Gauither; Anthony Crish; and Chad Givens, (collectively "Roosters") as defendants. The fourth amended complaint also included a claim for negligent training against Roosters.

On May 3, 2021, Roosters filed a third-party petition for declaratory judgment against Grange for a declaration of coverage under the BOP and the CUP. Roosters argued the BOP provided liquor liability coverage, which Grange did not dispute. Roosters also argued CU 47 in the CUP modified, but did not replace, exclusion c. Alternatively, Roosters argued CU 47 was ambiguous, and the ambiguity should be construed in its favor. Grange responded in opposition.

The circuit court heard argument from the parties and orally found CU 47 was ambiguous. On December 21, 2021, the circuit court entered an order granting summary judgment in favor of Roosters. The circuit court found CU 47 was ambiguous when it looked at the BOP, the CUP, and CU 47 in totality and specifically the relationship between the CUP and CU 47. Though the BOP and the CUP are two separate policies, the circuit court reasoned that the purpose of an umbrella policy is to supplement the underlying policy when the

3

underlying policy is exhausted. The written judgment does not identify any specific ambiguous language.

Grange appealed as a matter of right to the Court of Appeals, which held CU 47 was unambiguous. The court reasoned, "The word replace has an unambiguous meaning. The CU 47 endorsement replaced the entirety of Section I 2 c of the policy, intentionally deleting the paragraphs which otherwise would have provided coverage." *Grange Ins. Co. v. Georgetown Chicken Coop, LLC*, 2022-CA-0101-MR, 2023 WL 6932590, at *4 (Ky. App. Oct. 20, 2023). Thus, the court reversed the judgment and remanded for the circuit court to direct a declaratory judgment that the CUP does not provide coverage.

Roosters moved for discretionary review, which this Court granted.

## II. STANDARD OF REVIEW

"It is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court; and, thus, an appellate court uses a de novo, not a deferential, standard of review." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). We also review a circuit court's decision to grant summary judgment under the de novo standard. *Id.*

## III. ANALYSIS

On appeal, Roosters argues the circuit court was correct in finding there was ambiguity in CU 47 and that Roosters was entitled to summary judgment providing coverage under the CUP. Additionally, Roosters raises a new,

4

unpreserved argument that CU 47 contains another ambiguity that would create coverage for negligent supervision claims for the same incident.

First, CU 47 is unambiguous, and Roosters is not entitled to coverage under the CUP. Our longstanding precedent on the interpretation of insurance policies is clear. This Court has long held that unambiguous contracts are enforced as written. *Kentucky State Univ. v. Darwin Nat'l Assurance Co.*, 677 S.W.3d 294, 300 (Ky. 2023).

> "In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)); *see also* KRS[1] 304.14-360. "[W]ords which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citation omitted). When "the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002).
>
> If no ambiguity exists in the contract, a reviewing court must determine the intention of the parties "from the four corners of that instrument." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (citation omitted). Ambiguity is generally resolved in favor of the insured. *Thomas v. State Farm Fire and Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021). Pertinent to the Policy at bar, "'[c]ondition precedent' is

---

[1] Kentucky Revised Statute.

> a legal term of art with a clear meaning: 'An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017) (citations omitted).

*Id.* at 300-301.

Additionally, "Insurance contract law also dictates that when an endorsement deletes language from a policy, a court must not consider the deleted language in its interpretation of the remaining agreement." *Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996). In *Liberty Mut. Ins. Co. v. Blandford*, CIV.A. 3:98CV-6-S, 1999 WL 33756670 (W.D. Ky. Sept. 1, 1999), the Western District of Kentucky followed *Valassis* in holding: "There was nothing in the endorsement to suggest that only a portion of the Vacancy Loss Condition was replaced. Therefore, the Vacancy Loss Condition, consisting of both Terms and Provisions, was replaced in its entirety." *Id.* at *3.

As the Court of Appeals points out, there is no Kentucky case law addressing the conflict between primary coverage and an exclusion in an umbrella policy, but we need none so specific. Though the BOP and the CUP are related, they are separate policies, so we need only look to the four corners of the CUP for our analysis. The CUP must be enforced as written, otherwise Roosters "would be extended insurance coverage beyond the bargained-for terms." *Darwin Nat'l*, 677 S.W.3d at 301.

The first two sentences of the CUP provide: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." The liquor liability provision in the primary policy is located in Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, Subsection 2. Exclusions c. Liquor Liability. It provides:

**2. Exclusions.**

This insurance does not apply to:

. . .

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the occurrence which caused the "bodily injury" or "property damage" involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distribution, selling serving or furnishing alcoholic beverages. For the purposes of this exclusion permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for liquor liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

Endorsement CU 47 explicitly states that it replaces the liquor liability exclusion from the primary portion of the policy:

**Endorsement CU 47**
**LIQUOR LIABILITY EXCLUSION**

**This Endorsement Changes The Policy. Please Read It Carefully**.

This Endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA PART**

Exclusion c. of Paragraph **2. Exclusions of SECTION I-Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

8

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use or alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Roosters argues that because CU 47 does not explicitly state that it replaces the entirety of exclusion c., CU 47 only replaces the exclusions without effecting the last paragraph that contains exceptions. However, CU 47 plainly states that exclusion c. in the original policy form is "replaced by" the new c. Liquor Liability provision in CU 47. There is nothing left to compare. To accept Roosters' argument would require this Court to ignore the plain terms of CU 47 and engage in judicial editing. Doing so would render the endorsement meaningless. Thus, we hold the language of CU 47 is unambiguous and precludes coverage under the CUP.

Second, we decline to address Roosters' unpreserved argument that CU 47 would create coverage for a negligent supervision claim. In the last paragraph of the Appellants' Brief, Roosters argues that c. Liquor Liability specifically excludes claims for negligent supervision, hiring, training, and monitoring. CU 47 does not contain language regarding negligent supervision, so if it replaces c. Liquor Liability in its entirety, it creates coverage for such

9

claims. This argument is unpreserved, and Roosters does not request review for palpable error. "We will not search the record to construct [the Appellants'] argument for [them], nor will we go on a fishing expedition to find support for [their] underdeveloped arguments." *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 379 (Ky. App. 2018).

## IV. CONCLUSION

For the foregoing reasons, we affirm the opinion of the Court of Appeals.

Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., sitting.

All concur. Thompson, J., not sitting.

COUNSEL FOR APPELLANT:

Donald L. Cox
William H. Mooney
Lynch, Cox, Gilman & Goodman, P.S.C.


COUNSEL FOR APPELLEE:

Robert L. Steinmetz
Gwin Steinmetz & Baird PLLC